STATE ex inf. HADLEY, Informant, v. ROSE HILL
PASTIME ATHLETIC CLUB, Respondent.

St. Louis Court of Appeals, November 27, 1906.

1. **DRAMSHOPS: Clubs: Sale of Intoxicating Liquors to Members.** An incorporated club is not a person within the meaning of the dramshop act and may dispense intoxicating liquors to its members, but a club cannot be organized or used" as a mere scheme to sell liquors" in evasion of the dramshop act.

2. ——: ——: ——: Where a club was incorporated in a town which had adopted the local option law and operated in a building belonging to a saloon keeper, who had formerly occupied it for a dramshop, and such saloon keeper was afterwards made its business manager and controlled its business affairs, receiving and disbursing revenues as he saw fit, making only a perfunctory accounting to the board of directors of the club, and where a bar was maintained in the club building and liquors sold as in an ordinary dramshop except that sales were confined to members, and where the members paid no dues but only paid fifty cents as initiation fee, the club was a mere scheme to evade the dramshop act; the fact that it had certain athletic paraphernalia and certain social features was not sufficient excuse for the unlawful manner of selling intoxicating liquors.

Original Proceeding by Quo Warranto.

OUSTER ORDERED.

*George L. Edwards* and *Edward D'Arcy* for informant.

*Zach J. Mitchell* for respondent.

BLAND, P. J.—Information in the nature of a *quo warranto* filed by the attorney general for dissolution of defendant corporation and forfeiture of its charter. After stating preliminary matter the information alleges:

"That in and by said articles of agreement the object and purpose of said corporation are stated to be

121 App—6

" 'To promote the physical development of its members, to educate and train them in athletics, field sports and gymnastics, such as baseball, football, golf, tennis, running, jumping, lifting, throwing, wrestling, turning and bowling, to engage in and take part in athletic contests, to give exhibitions of any of the above-named games and sports and to obtain by renting, leasing or privilege, suitable grounds, club house, quarters and gymnasium, to encourage the social intercourse of its members, and for that purpose to fit up club rooms and reading rooms.'

"That thereafter, and to-wit, on the ——day of January, 1902, the said Rosehill Pastime Athletic Club, in violation of the law of the State of Missouri and its charter, and in fraud of the said laws of the State of Missouri, and its said charter, did unlawfully misuse its franchises as follows:

"That said corporation, by and through its servants, agents and employes, did secure and take possession of a certain building in the city of Kirkwood and State of Missouri, located on the north side of Main street, in said city, and between Webster avenue and Clay avenue, parallel streets intersecting said Main street, in said city of Kirkwood; and having so obtained possession of said building, did fit up the same as a barroom and grog shop, with a bar, tables, glasses, and other ordinary devices and paraphernalia for conduct of a barroom and dramshop, and did purchase, keep on hand and supply the said room with a supply of whiskey, beer, wines, tobacco, and has ever since said last-mentioned date kept and maintained the said barroom and dramshop, together with a supply of said liquors, and did keep and since said date, has, continuously, kept and maintained at said room a barroom or dramshop for the sale of such liquors, and has continuously since said date sold, delivered and given away to divers persons in said room and at said city of Kirkwood, beer, whiskey, wines, and other intoxicating liquors such as is usually sold in an

ordinary dramshop or barroom, and did, from day to day, continuously since said date, sell said wines, whiskey, beer and liquors, both to members and non-members of the said corporation. That at all the said dates and times aforementioned the provisions of the local option law, article 3, chapter 22, Revised Statutes of Missouri, 1899, were in force and effect in the said city of Kirkwood.

"Your informant further states that by reason of the premises said corporation has usurped and assumed to exercise rights, privileges and franchises not conferred upon it by its charter; that it has violated the laws of this State and has thereby become liable to forfeit its charter."

The answer put at issue all the incriminating allegations of the petition.

The purposes for which the club was formed are correctly set forth in the information. The issue to be decided is whether the club, chartered for a lawful purpose, is being used as a mere scheme to sell intoxicating liquors in defiance of law. The evidence taken by the commissioner and certified to us shows that William Soehngen, a saloonkeeper of twenty years' experience, was appointed manager or steward of the club, with power to purchase and sell intoxicating liquors to the members, and has been continued in the office of steward from the organization of the club up to the present time, at a salary of sixty dollars per month. The evidence also shows that the first building occupied by the club was Soehngen's, in which he had conducted a saloon but closed (a short time before the club moved in) on account of the expiration of his license as a dramshop keeper, which license he had been unable to renew. From this building, the club moved into another building belonging to Soehngen or his wife, on Main street, in the city of Kirkwood. This building had also been recently vacated as a saloon by Soehngen, for the reason

he could not obtain a license from the city authorities to continue in the business. The first floor of this building is occupied by the club for club purposes and is partitioned into four rooms. The first room is about eighteen by twenty feet and contains the athletic paraphernalia of the club; back of this room is a pool room containing a pool table and other tables, cards and chairs; to the side of this room is a reading room containing tables and chairs; back of the pool room is what is called in the evidence, "the barroom." In it is an ice chest, a four-foot counter or bar and liquors, consisting principally of whiskey and bottled beer, which are served over the bar or delivered to the members at the tables in the pool or reading room at ten cents per drink for whiskey and ten cents a bottle for beer. The club also deals out to its members cigars and tobacco. The monthly liquor bills are something over two hundred dollars. The salary account for steward and assistant steward, the only paid employees of the club, is one hundred dollars per month. The monthly expenditure for reading matter is about one dollar and sixty cents. The ice and coal bills average something near fifty dollars per annum. The club pays thirty dollars per month rent for the building and five dollars per annum for fishing grounds on the Meramec River. Each member is required to pay fifty cents as an initiatory or membership fee on becoming a member. No stated dues are required from the members and no assessments for the payment of the expenses of the club have ever been levied. All the expenses have been met from the sale of liquor, cigars and tobacco, and the membership fee of fifty cents. The club has never made any profit on the sale of its supplies, though the proceeds have been sufficient to defray the expenses of the club and keep up its stock of liquors, cigars and tobacco. Members are suspended or expelled for misconduct by the directors. To become a member one is required to sign a written application for membership, be recommended by a member and his application

accepted or acted upon favorably by the board of directors. The steward buys all liquors, cigars and tobacco for the use of the club and pays for the same out of its funds. Prior to 1905 he occasionally, but not regularly, submitted bills for supplies to the board of directors for approval, —we say approval for there is no record or evidence that any of his bills were ever disapproved, or even examined. In later years the financial transactions of the steward have been reported with some regularity. As shown by the evidence of some of the members, scarcely any attention is given to these reports and they have, uniformly and without exception, been approved by the board. The guests of members are permitted to visit the club but they are not permitted to buy liquor and no instance is shown where a non-member has purchased liquor of the club. A number of the members testified they joined the club for the sole purpose of procuring drinks of whiskey and beer whenever they wanted them, and that the club was conducted "pretty much" as are ordinary saloons, and was known as "Soehngen's Club." Others testified they became members on account of its social features.

In the front room of the club house is a horizontal turning bar, a spring board and climbing ladder, climbing poles, high-kicking stands, a punching bag, boxing gloves, Indian clubs, quoits and a kicking horse. A pool table and card tables are in the room back of this. The athletic paraphernalia is used to some extent by the younger members of the club. The pool and card tables are much more used. In the reading room the elderly members frequently engage in discussing topics of general interest, such as politics and religion, and the members of leisure use this room as a place to meet their friends socially, to read the news and to be comfortable. The foregoing is a brief summary of what the evidence

shows in respect to the drinking, social and athletic features of the club as it is conducted.

In State *ex rel.* v. The St. Louis Club, 125 Mo. 308, 28 S. W. 604, GANTT, P. J., reviewed at considerable length the cases dealing with the rights of a club to dispense intoxicating liquors to its members, and held that an incorporated club is not a person, within the meaning of the dramshop act, and may dispense intoxicating liquors to its members, but a club could not be organized or used "as a mere scheme to sell liquors in defiance of law." This case has not been overruled or criticised by our Supreme Court in any subsequent case. It is on the side of personal liberty. It follows the best considered and most conservative cases from other States and is a controlling authority on this court. The law having been settled for us by the St. Louis Club case, all that remains for us to deal with is to apply the law as settled to the facts in the case, and we shall have discharged this duty if we correctly answer the following interrogatory: "Is the club being used for the purpose of evading the dramshop act?" On the oral argument it was stated by counsel on both sides, that the city of Kirkwood, where the club is located, has adopted local option, that is, has prohibited dramshops within its corporate limits. The club is housed in a building belonging to Soehngen or his wife that was formerly occupied by him as a dramshop. Soehngen is, and has, been from the organization of the club, its business manager, and has, by and with the consent of the members and board of directors, had and exercised absolute control of its business affairs. He receives and disburses its revenues as he sees fit. His accounting to the board has been merely perfunctory. A bar is maintained in the club building and liquors are sold as in any ordinary dramshop, except the sales are confined to members of the club. No dues are paid or required of the members. The

paltry sum of fifty cents is charged as an initiatory membership fee. So that by paying the sum of fifty cents, the member, without other charge or expense, may continue for an indefinite period (as long as he chooses to be a member) to visit the club house and procure drinks of intoxicating liquors at the usual price and have them served at the bar or at a table as in any ordinary dramshop. Soehngen and his assistant are the only paid employees of the club and they occupy the same relation to it as do the manager or owner and barkeeper to any ordinary dramshop. On this state of facts there can be but one answer to the interrogatory, to-wit, the club is used as a scheme to evade the dramshop act. Its social and athletic features afford no excuse for the unlawful manner in which it sells intoxicating liquor to its members. Wherefore, it is considered that the defendant corporation be dissolved, that its members be prohibited from exercising any of the corporate rights, privileges or franchises granted by its charter and that its charter be and is hereby declared forfeited and for naught held. It is further considered that the relator have and recover of and from the respondent its costs herein expended and have execution therefor. All concur.