## THE STATE v. HICKS, Appellant.

### Division Two, December 9, 1903.

1. **Homicide: INSTRUCTION: SELF-DEFENSE: MANSLAUGHTER.** Where there is no evidence of a difficulty between defendant and deceased at the time of the homicide, or that defendant was in anywise acting in self-defense, no instruction on the subject of self-defense should be given, nor should the instruction go further and tell the jury that if defendant, without intent to kill deceased, entered into the difficulty he was guilty of only manslaughter in the fourth degree. An instruction should not be given if there is no evidence on which to base it.

2. ——: ——: ——: HARMLESS ERROR. Where there is no evidence whatever of any facts indicating that defendant shot deceased in self-defense, no instruction on that subject should be given. But if it is given, it is an error of which defendant can not complain, for it was an error in his favor.

3. ——: ——: EVIDENCE OF SELF-DEFENSE. Where there is absolutely no evidence that deceased saw defendant at the time of the homicide or knew of his presence, the testimony of defendant that he wouldn't have shot had not deceased "made a pass for his pistol," is no evidence on which to base an instruction for self-defense.

4. ——: ——: COVERED BY OTHERS GIVEN. It is not error to refuse instructions for defendant if the questions presented therein are fully covered by others given for the State.

Vol 178 mo—28.

5. **Evidence:** ADMISSION: PRESERVATION IN BILL.  The appellate court will not consider whether or not it was error to admit in evidence an affidavit filed by defendant for a continuance if the affidavit was not incorporated in the bill of exceptions, nor if the record does not show it was introduced in evidence.

6. **Information:** AFFIDAVIT: POHL CASE.  Since the statute of 1901 went into effect, all informations, in felony as well as misdemeanor cases, must be supported by affidavit.  And this holding is not in conflict with the decision in State v. Pohl, 170 Mo. 422, since the information in that case was supported by the affidavit of a competent witness, and what is there said indicating that an affidavit is not required was not necessary for a proper disposition of that case and hence mere *obiter*.

7. ———: ———: SIGNED BY PROSECUTING ATTORNEY.  The affidavit does not have to be signed by the prosecuting attorney; if the prosecuting attorney signs the information, and the clerk certifies thereon that the "prosecuting attorney makes oath and says the facts stated in the information are true," etc., the statute is substantially complied with.

Appeal from Douglas Circuit Court.—*Hon. Asbury Burkhead,* Judge.

AFFIRMED.

*Boone & Orr, L. O. Neider* and *Thos. H. Musick* for appellant.

(1)   The court erred in giving instruction 21.   The error in this instruction is this: it does not go far enough and for that reason is erroneous and misleading.   (2)   While it is true that the law of self-defense does not imply the right of attack, yet under the law the defendant was entitled to a further instruction that if he entered into the difficulty without the intent to kill the deceased, then he would only be guilty of manslaughter in the fourth degree.   State v. Pennington, 146 Mo. 27.   Undoubtedly the defendant had the right to arm himself with a gun for his own protection and travel over his own premises, and in view of the violent threats which had been made against the de-

fendant by the deceased and Sam Goss, it was proper and right that he arm himself for his protection at all times; and although the defendant may have put himself in the way of being assaulted by deceased or Goss, yet this would not preclude him from setting up self-defense. State v. Mathews, 148 Mo. 185. There is no evidence that defendant sought or brought on or voluntarily entered into a difficulty with deceased, and it is error to predicate an instruction on such assumption. (3) Instruction 22 is clearly erroneous in this: it singles out a certain fact and leaves the matter wholly to the jury to decide thereon. State v. Sivil, 105 Mo. 530; State v. Bell, 70 Mo. 633; State v. Williams, 136 Mo. 292. It is clearly erroneous also for the reason that it comments upon the evidence. State v. Sivil, supra. This instruction is not the law. It makes no declaration of law. If this instruction should be the law, it is too narrow, for the reason that it tells the jury that they must confine themselves to the one proposition; that is, whether or not the defendant acted wholly upon the apprehension of fear; thus wholly excluding the other proposition as to whether his mind had become inflamed with passion and anger when he found his sister having sexual intercourse with deceased. (4) Instruction 23 is vicious and is in contradiction of other instructions given by the court. It is erroneous for the reason that it comments upon the evidence and singles out a certain fact for the jury to decide on. State v. Sivil, supra. And it submits the question of lying in wait and shooting from ambush when there was no evidence that would justify such instruction. It is erroneous also because it tells the jury that although defendant may have known that deceased had been criminally intimate with his sister, yet that fact would not reduce the killing below murder in the second degree, and it would afford no justification or mitigation for the shooting. State v. Grugin, 147 Mo. 39. (5) The information in this case is fatally defective for want of verifica-

tion by the oath of the prosecuting attorney, or some other competent person.   State v. Bennett, 102 Mo. 356; Sec. 2477, R. S. 1899.   The information should have been verified by the affidavit of the prosecuting attorney.   It is true that the prosecuting attorney signed the information, but this is not enough.   If the affidavit is not signed by the party who made it, it is a nullity. Hargadine v. VanHorn, 72 Mo. 370.   Under the law of this State all informations filed in a court of record must be verified by the oath of the prosecuting attorney or some competent person.   State v. Sayman, 61 Mo. App. 244.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1)  (a)  Appellant complains of instruction 21 given by the court.   This instruction was a clear conception of the law and has frequently received the sanction of this court.   State v. Partlow, 90 Mo. 608; State v. Weeden, 133 Mo. 76; State v. Cabel, 117 Mo. 76; State v. Vaughan, 141 Mo. 514; State v. Lockett, 168 Mo. 480.  (b)  It seems, however, that the defendant does not seriously attack this instruction; but insists that the court ought to have instructed the jury as to the law in a case wherein the defendant entered into a difficulty without intending to kill.   It is asserted that under such circumstances one would be only guilty of manslaughter in the fourth degree.   This proposition is correct.   But in answering the appellant's complaint, it may be said that the evidence in this case shows that the defendant either voluntarily brought on the difficulty with intent to kill, or that he killed the deceased in self-defense.   There is not a particle of evidence in this record tending to show that the defendant entered into a difficulty with the deceased with any other intent than to kill him.   There is, therefore, no evidence upon which to base such an instruction.   Besides, had the defendant wished the court to instruct on this feature of the

law, he should have noted an exception at the time the instructions were given, to the failure of the court to instruct on all the law arising in the case. Having failed to do this, he can not now complain. State v. Cantlin, 118 Mo. 100; State v. Vinso, 171 Mo. 576.   (2) Instruction 23 was quite as favorable to the defendant as the evidence justified.   State v. Bulling, 105 Mo. 204; State v. Holme, 54 Mo. 153; State v. France, 76 Mo. 681; State v. Herrell, 97 Mo. 112; State v. Privitt, 175 Mo. 207; 1 McClain on Crim. Law, sec. 341; 1 Wharton's Crim. Law, sec. 459; Turner v. State, 70 Ga. 667; People v. Hertado, 63 Cal. 288; Sanchez v. People, 22 N. Y. 147; McNeal v. State, 102 Ala. 121.

BURGESS, J.—From a conviction of murder in the second degree, and the assessment of his punishment at ten years' imprisonment in the penitentiary, under an information filed by the prosecuting attorney of Douglas county, in the office of the clerk of the circuit court of said county, charging the defendant, Columbus Hicks, with having at said county on the first day of December, 1901, shot to death with a rifle gun one Hez Clay, defendant appeals.

At the time of the homicide, and for many months prior thereto, the deceased and defendant's sister, Christeeny Hicks, were engaged to be married, and were to have been married on the 25th day of December, 1901. He was very attentive to her, and she spent most of her time with him. The defendant, his father and mother were opposed to the attentions of deceased towards the young lady, and had ordered him to remain elsewhere than at their home. Matters grew more unpleasant as time passed, and the daughter was compelled to leave the home and seek an abiding place wheresoever she might. The bitterness of feeling between the deceased and defendant did not wane but grew more intense, and they each began to threaten the life of the other.

The evidence shows that on the day of the tragedy, the deceased and a friend of his by the name of Goss, passed by the home of the defendant, and were observed to pass by him. That a short time before, defendant's sister had left home, with the avowed intention of going to a neighbor's. She had not been gone but a short while when the deceased came along in company with his friend, Goss. They soon came up with the sister of the defendant, whether by previous appointment or not, does not appear. They began to talk with her, Goss soon moved apart, some twenty yards from the deceased, and deceased sat upon the fence. Goss and the defendant's sister both testify that while the deceased and she stood talking on the public highway, he was shot by some one in ambush. Their testimony is, that the deceased was doing nothing more than talking with the girl at the time he was shot, and on account of the dense woods skirting the roadside, they were unable to discover the identity of the assassin. The deceased was shot with a Winchester rifle and expired almost immediately.

On behalf of the defendant, the evidence tends to show that the deceased was criminally intimate with defendant's sister; that he on one occasion remained all night at the home of the defendant and occupied the same bed with her; that the defendant's father urged the defendant to either marry his daughter, or else remain apart from her; but that deceased continued his attentions and persisted in the liaison. Defendant testified that the deceased at the moment he was killed was in the act of copulation with defendant's sister, and that the deceased being discovered by defendant placed his hand behind him as if to draw a pistol, whereupon he was killed by defendant, but this was denied by both the sister and Goss, the only witness to the occurrence. It is admitted that the deceased was killed early in the afternoon upon a public thoroughfare, and that he and the young lady were standing in full view of Goss.

Besides, from the affidavit for a continuance filed by defendant it appears that he thought he could prove by an absent witness that he was at the residence of the witness at the time the deceased was shot. ·

The court over the objection and exception of defendant gave a large number of instructions, but only the following are complained of:

"21.   The law of self-defense does not imply the right to attack. If you believe from the evidence that the defendant armed himself with a deadly weapon and sought the deceased with the formed felonious intent of killing deceased, or sought, or brought on or voluntarily entered into a difficulty with deceased, with the felonious intention to kill deceased, then the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed.

"22.   The court instructs the jury that if you believe from the evidence that the defendant shot and killed deceased because of the alleged attempt of said deceased to draw a weapon on defendant and not because he saw the deceased in the act of sexual intercourse with his sister, then you will not consider such act of sexual intercourse, if they were in such act, or the previous sexual relations of deceased and Tennie Hicks, if such relations existed, but you will confine yourself to the question whether the defendant shot in the necessary defense of his person as the law of self-defense is herein defined.

"23.   Although the jury may believe from the evidence that the deceased and Tennie Hicks were criminally intimate, this would not in law justify or excuse the defendant in lying in wait to shoot and kill deceased, if you believe from the evidence he did so lie in wait; so if the jury believe from the evidence that the defendant followed the deceased and shot him from ambush, feloniously, premeditatedly and with his malice aforethought as the terms are in these instructions defined, then the criminal relation between said deceased

and Tennie Hicks, if it did exist, and if it were known to defendant, does not reduce the killing below murder in the second degree, and affords no justification or mitigation for the shooting, if done under such circumstances.''

The defendant asked the court to instruct the jury as follows:

''1. The law accepts human nature as God has made it, or as it manifests itself in the ordinary man, and every sort of conduct in others which usually excites the passions of the mass of men so as to practically overthrow their reason, the law holds to be a sufficient cause for provocation, and in this connection it must not be forgotten what high estimate the men of all nations have placed upon the chastity of their women, and the inviolability of their persons, and therefore if the jury believe from all the facts and circumstances in evidence, that Clay had been criminally intimate with the defendant's sister; that at the time of the homicide defendant, being armed for his own defense only, because of communicated threats of deceased made against his life, came suddenly and unexpectedly upon deceased in criminal intercourse with his said sister, and that in consequence of such sight defendant's mind became inflamed with anger and passion, and without deliberation or premeditation he instantly fired the fatal shot; and if the jury further believe that such conduct on the part of the deceased was reasonably sufficient provocation to inflame the blood under such circumstances—in such case defendant is not guilty of murder and the verdict should be for manslaughter in the fourth degree.

''2. The court instructs the jury that if they believe from the evidence that the killing of deceased was committed by defendant, and the defendant in so killing deceased acted upon a sudden passion, engendered by reasonable provocation, then the presumption of malice would be negatived, and the killing, though intentional, will be manslaughter in the fourth degree.

"3. The court instructs the jury that if they believe from the evidence that deceased and Sam Goss were in conspiracy in making threats against defendant for the purpose and with the object of intimidating defendant from interfering with debaucheries they were attempting to practice on the sister of the defendant; that in furtherance of such conspiracy they had, a few days previously, together visited defendant's home, and there threatened his life; and in further pursuance of such conspiracy had together laid in wait for defendant as he was pursuing his ordinary business affairs, and the conduct and attitude of said parties were such as to reasonably produce the belief in defendant's mind and did so produce the belief that either one or both of said parties were about to inflict great bodily injury upon defendant, then in such case defendant had a right in self-defense to shoot either one of said parties, and the jury will acquit.

"4. The jury are instructed that in considering the right of self-defense they have to take into consideration all the circumstances leading up to the homicide, and the present conditions and situations of the parties as they appeared to defendant, and if they believe that such circumstances and conditions, as they appeared to defendant, were such as to become reasonable grounds for apprehension and fear by defendant, that he was in imminent danger of great bodily harm from deceased and Goss acting in concert with him; and further, that defendant did, at the time, entertain such fear and apprehension; in such case the shooting by defendant was justifiable and the jury will acquit.

"5. That if they believe from the evidence that for several months it had been brought to defendant's knowledge that deceased was threatening his life, and carrying weapons with which to put such threats into execution; that only a few hours before the homicide deceased and one Goss came to defendant's home and repeated such threats; that thereafter, on the same day

defendant in going to attend to his ordinary business affairs, and carrying with him a gun for his own protection only in traveling along a by-path, entirely unexpectedly by him, came upon deceased and said Goss lying in wait for him; and that from the herein . stated circumstances, and the demeanor and attitudes of deceased and said Goss, defendant had good reason to believe and did believe, that deceased and said Goss intended and were about to do him some immediate bodily harm in fulfillment of such threats, then in such case defendant had a right to shoot in self-defense, and the jury will return a verdict of acquittal. And in determining as to the apprehensions of defendant at the time of the shooting and of the reasonableness of such apprehension, the jury will take into account all transactions between defendant and deceased on the day of the killing; and the threats, if any, of deceased, together with all the facts and statements of others connected with such transactions and give to such transactions, facts and statements in connection with all other evidence before the jury, for the purpose herein mentioned, such weight as they may deem proper.

"6.    The court instructs the jury that if they believe from the evidence that defendant is guilty, but entertain a doubt as to whether he is guilty of murder or manslaughter, then they should give defendant the benefit of the doubt and find him guilty of manslaughter, and if they have a reasonable doubt as to whether he is guilty of any offense against the law as defined in these instructions, they should acquit.

"7.    The defense presents two theories of this case, founded on two different states of mind, but both of which under appropriate circumstances may very well co-exist in the mind of man at one and the same time.    One such state of mind is fear and apprehension of danger, and the other is indignation.    In this case defendant may have been in mortal fear of personal in-

jury by reason of threats and conduct of deceased and Goss, if threats had been made and communicated, and at the same time, his passions heated and inflamed by the sudden coming upon deceased in criminal intercourse with his sister, if he did so come upon them, and it is for the jury to say from all the evidence and circumstances which of said states of mind, if either prevailed, was the inducing cause of the shooting by defendant; and if they believe that he shot by reason of the indignation and passion, suddenly aroused in his bosom by the debauching conduct of deceased, and if they further believe that such conduct was of a character reasonably calculated to kindle a brother's blood and arouse, and did arouse, anger and passion to a degree that prevented all premeditation and deliberation, they will find the defendant guilty of manslaughter in the fourth degree only, unless they further believe that he shot by reason of fear and apprehension of personal injury induced by suddenly coming upon deceased and Goss lying in wait, and of their attitude and conduct at the time, coupled with their previous threats against his life; and also that such conduct and attitude, coupled with previous threats in evidence, were calculated to induce apprehension of their doing him immediate personal injury, they are further instructed that if they do believe that the shooting was induced by such apprehension of danger, and that there was reasonable grounds for such apprehension on the part of the defendant, then in such case defendant should be acquitted.''

Which instructions were by the court refused, and the defendant then and there excepted.

Instruction numbered twenty-one is challenged upon the ground that it does not go far enough, in that it does not tell the jury that if defendant entered into the difficulty without the intent to kill the deceased, then he would only be guilty of manslaughter in the fourth degree. We are unable to agree to this contention and

are clearly of the opinion that under the facts disclosed by the record, the instruction is a correct presentation of the law of the case. Such an instruction as contended for by defendant would have been manifestly erroneous for the want of evidence upon which to base it. There is no evidence whatever of a difficulty or controversy between defendant and deceased at the time of the homicide, or that defendant was acting in the defense of his person when he shot and killed deceased, or anything else that would have authorized such an instruction as contended for. While the first sentence of the instruction seems to intimate that there was evidence that defendant acted in self-defense, the evidence was to the contrary and that part of the instruction unauthorized, but whatever of error there is in it is in favor of the defendant and of which he has no right to complain.

It is argued that instruction numbered twenty-two is erroneous upon the ground that it singles out a certain fact, that is, that defendant shot and killed deceased in self-defense.

That this instruction ought not to have been given for the want of evidence to authorize it, is, we think, too clear for argument, for there was no evidence of self-defense in the case. In fact there was not a particle of evidence that deceased saw defendant at the time he was shot. It is true that defendant testified that he wouldn't have shot if deceased had not made a pass for his pistol, which in the absence of some evidence that deceased saw him or knew of his presence was not of a feather's weight and entirely insufficient upon which to predicate the instruction. But it was an error in favor of defendant, and harmless. We see no substantial objection to instruction number twenty-three. It was well warranted by the evidence, and very favorable to the defendant.

Instructions numbered one and two, asked by defendant, were covered by instruction numbered twelve

which was given.    So that defendant has no ground for
complaint on that score.    Nor was there error in refus-
ing other instructions asked by defendant because the
questions presented by them were covered by instruc-
tions which were given.

The insistence that the court erred in permitting the
State to introduce in evidence the affidavit filed by de-
fendant for a continuance, can not be considered for the
reason that it is not incorporated in the bill of excep-
tions.    And for the further reason that the record does
not show that it was introduced in evidence.    [State v.
Hancock, 148 Mo. 488.]

A point is made on the sufficiency of the informa-
tion which defendant says is invalid for the want of veri-
fication by the oath of the prosecuting attorney or some
other competent person.    This point was raised by mo-
tion in arrest in the court below, and is now insisted
upon in this court.  Since the Acts of the General Assem-
bly, approved March 13, 1901 (Laws 1901, pp. 138, 139),
went into effect, which was before the information in
the case in hand was filed, all informations are required
to be signed by the prosecuting attorney and to be veri-
fied by his oath or by the oath of some person compe-
tent to testify as a witness in the case, or be supported
by the affidavit of such person, which shall be filed with
the information (sec. 2477, R. S. 1899; Laws 1901, su-
pra; State v. Bonner, 178 Mo. 424); but the *affidavit* is
not required to be *signed by him*.    It will be observed
that the information was in fact signed by the prosecut-
ing attorney, and the clerk of the court in which it was
filed having certified under his hand and the seal of the
court that the "prosecuting attorney makes oath and
says that the facts stated in the information are true,
according to his best knowledge, information and be-
lief," it was a substantial compliance with the statute.

It was inadvertently said in the case of State v.
Pohl, 170 Mo. 422, that an information for felony filed

on the 24th day of September, 1901, which was after the amendment to the Constitution went into effect on the 19th day of December, 1900, need not be under oath, but was sufficient if presented by the Attorney-General or the prosecuting attorney of the proper county under his official oath. As a matter of fact, however, the information in that case was supported by the affidavit of a person who had knowledge of the commission of the offense and by whom it was committed, as provided for by section 2478, Revised Statutes 1899, amended by Laws 1901, pages 138 and 139. Moreover, no objection was taken to the information by motion to quash, but for the first time by motion in arrest, and then upon the grounds only that the information and the allegations therein contained were insufficient to require the defendant to be placed upon trial, and, because the information did not charge the defendant with a crime known to the law. It will thus be seen that no objection was taken to the information as not being sworn to by the prosecuting attorney, and what was said by us in this regard was mere *obiter*.

It is asserted by defendant that the judgment is erroneous upon the ground that it does not show that the defendant was present when it was rendered against him, but this is a misapprehension, as the record shows in express terms that defendant and his attorneys were present in court when the verdict was rendered and judgment rendered thereon.

There were a number of instructions given without any evidence upon which to bottom them, but all such were in favor of defendant. Taken as a whole the instructions were more favorable to him than he had any right to expect.

The judgment should be affirmed. It is so ordered. All concur.