# CHARLESTON.

## COHEN v. THE KING KNOB CLUB.

Submitted January 26, 1904.   Decided February 23, 1904.

1. INTOXICATING LIQUORS—*Illegal Sale.*

    Under section 18, chapter 32, Code, an allegation in a bill in equity charging that intoxicating liquors are sold and vended by the defendant, at a certain described house, building or place "contrary to law" is insufficient for uncertainty. It should further allege in what manner such liquors are sold and vended contrary to law; as, without having a State license therefor.  (p. 111).

2. SOCIAL AND LITERARY CLUB—*Whisky Sold.*

    A corporation claiming to be a social and literary club, which requires no qualifications for membership except the payment of an initiation fee of one dollar, for which fee there is issued to the applicant a membership card and a coupon with twenty tickets attached each, "good for five cents for games and supplies" which tickets are received by the general manager of the club in exchange for drinks, one ticket for a glass of beer, and two tickets for a drink of whisky, and the members are permitted to buy such coupons with five, ten, or twenty tickets attached at twenty-five cents, fifty cents, and one dollar each, respectively, to be so exchanged for such drinks at such club. *Held:* To be a fraudulent device to evade the revenue laws of the State, and the house, building or place where such sales are made will be held, taken and deemed to be a common and public nuisance, and will be abated as such.  (p. 113).

Appeal from Circuit Court, Barbour County.

Bill by H. Cohen against the King Knob Club.    Decree for plaintiff, and defendant appeals.

*Reversed.*

FRED O. BLUE and JOHN BASSEL, for appellant.

H. E. TYSON, for appellee.

McWHORTER, JUDGE:

A. N. Humphreys and four others obtained a charter from the Secretary of State and organized a corporation by the name of The King Knob Club, to be located in the town of Berryburg, in Barbour county.    Its objects set forth in its charter are as follows:

"For the promotion of sociability, the diffusion of useful knowledge and improvement of the relation of the members of the club, and its visitors as well as for benevolent purposes and for the entertainment and amusement for the members and invited guests and for the maintaining of billiard and pool tables and games of the like; also card playing and other games for social amusement and the establishment of a buffet from which refreshments and drinks may be served for the express use of the club and its members and guests and for other like amusements and entertainments, and for these purposes desire authority to purchase or lease, sell or convey real estate or real property for the value of at least five thousand dollars, all of which property to be acquired for the sole use of the corporation and for the purposes aforesaid.    The principal features of said club to be entertainments and amusements by card playing and the other games above mentioned and the serving of refreshments and drinks to the members of said club; its guests and visitors. No such powers and privileges shall be exercised in violation of any law of the State of West Virginia."    The corporation adopted by-laws providing that the membership should be limited to seven hundred and fifty persons.    A person to become a member was required to pay $1.00 which had to accompany his application for membership.    For this $1.00 he received a book of coupons with tickets attached.    These coupons were twenty-five cents, fifty cents and one dollar, with tickets attached, stamped or printed,—"Club Room King Knob Club.    Good for

5 cents for games and supplies. Not good if detached. No...... ." These tickets were to be used for buying drinks or other supplies, one ticket, five cents, for a glass of beer, two tickets for a drink of whisky. The corporation employed a general manager at $75 per month to keep the club in order and to issue drinks to the club members. It rented a house of five rooms, including a cold storage room for which it paid, or was to pay $3,000 per annum; sub-renting one of the rooms for a barber shop at $2.00 per month. The general manager paid $1.50 per month for another room. The house used by the club for its headquarters is by the evidence variously estimated to be worth from $250 to $1,000 and is located within some twenty-five feet of the business house of H. Cohen, who is engaged in the mercantile business. The club commenced business in the summer of 1902. On the 27th day of September of that year H. Cohen presented his bill in equity to the judge of the circuit court of Barbour County alleging that the defendant corporation had been guilty, and was then guilty of selling and vending in said building so occupied by it, intoxicating liquors contrary to law and that by reason of the sale of such intoxicating liquors in said building it had become and was a common nuisance under section 18, chapter 32, Code, and praying that the same might be abated or closed up as a place for the sale of such liquors contrary to law, and for an injunction against said defendant corporation to restrain and abate such nuisance, and for general relief, upon which the judge granted an injunction as prayed for. Defendant filed its demurrer and answer denying that it was selling intoxicating liquors contrary to law. Depositions were taken and filed for plaintiff and defendant. On the 10th day of October, 1902, the cause was submitted to the court upon the bill and the answer and general replication and upon the depositions taken in the cause, and the court perpetuated the injunction and gave judgment for costs against the defendant, from which decree the defendant appealed, and says that it was error for the court below to enter the decree of October 10, 1902, in the cause for plaintiff and making perpetual the injunction awarded the plaintiff. Appellant does not argue in its brief the question of demurrer but says: "We see no reason why such club should have such right to sell or offer to sell, etc., without a license, but the question is, in this case has the defendant sold

or offered to sell to its members. We submit not." Thus relying upon its defense upon the merits of the case. In *State* v. *Boggess,* 36 W. Va. 713, (Syl. pt. 3): "It is generally sufficient in an indictment to allege a statutory offense in the language of the statute." Section 18, chapter 32, Code, provides: "All houses, buildings and places of every description where intoxicating liquors are sold or vended contrary to law shall be held, taken and deemed to be common and public nuisances, and courts of equity shall have jurisdiction by injunction to restrain and abate any such nuisance upon bill filed by any citizen or by the prosecuting attorney of any county in the name of the State of West Virginia, and they may also be abated as such upon conviction of the owner or keeper thereof as hereinafter provided." Under said section 18, an allegation that a person is selling or vending intoxicating liquors contrary to law is equivalent to saying that he is so doing without having a State license therefor. Under section 16 of the same chapter providing for the sale of spirituous liquors under a state license it is not made an offense for the vendor to sell such drinks "to any person who is intoxicated at the time, or who is in the habit of drinking to intoxication, when he knows or has reason to believe such person is a minor, or of unsound mind, or is intoxicated, or is in the habit of drinking to intoxication, or if he permit any person to drink to intoxication on any premises under his control, or shall sell or give any intoxicating drink to any one on Sunday," except as to persons who have obtained license to sell. Any other person not having a state license simply sells contrary to law whether he sells to a minor or person of unsound mind, or intoxicated person, or on Sunday. An allegation in a bill to abate a nuisance charging that the defendant is guilty of selling and vending, at the house, building or place, in the bill described, intoxicating liquors contrary to law, in the language of the statute is, in my view of the case, sufficient on demurrer and in this opinion Judge Dent concurs. If the allegation of the bill be true that the defendant was vending and selling intoxicating liquors contrary to law its defense would be the possession of a license, and it is incumbent upon it to prove that defense. *State* v. *Horner,* 52 W. Va. 373. However a majority of the Court are of the opinion that the allegation should be more specific and allege in what manner or in what respect such selling and vend-

ing was contrary to law; as, doing so without a state license therefor. Hence the demurrer should have been sustained, and the Court are unanimously of the opinion that the plaintiff having made a good case on the proofs, the injunction should not be dissolved, but the plaintiff should be permitted to amend his bill in the particular indicated and the injunction be perpetuated. It is insisted by the defendant that technically there was no sale, giving Bishop's definition of sale: "To transfer the ownership for a valuable consideration," and Benjamin on Sales: "The transfer of the absolute or general property in a thing for a price in money." In order to evade the law the defendant sold the coupons with the tickets attached and received the price thereof in money, then the purchaser of the coupon would go to the general manager, the vendor of the drinks and deliver to him two tickets from a coupon for a drink of whiskey or one ticket for a glass of beer. The price of the coupons and tickets being in the till of the defendant in advance of the sale of the whiskey. Is this not as much an evasion of the law as to arrange with a keeper of a speakeasy to place the bottle of whiskey behind a certain stump, then the purchaser go and take up the bottle and leave the price of it in money in its place? There are many schemes and devices for evading the law, and the defendant has adopted one, which is clearly a mere fraudulent device to evade the revenue laws. This charter taken out by five persons, among other things "for the promotion of sociability" and "the diffusion of useful knowledge" and "for benevolent purposes" and "the serving of refreshments and drinks to the members of said club, its guests and visitors," and as appears from the testimony in the case the object of "serving drinks" was the "principal feature" of the "principal features of said club." It made very extensive provisions in the way of numbers of membership, sufficient to include all men in the vicinity of its location, who would probably be induced by its very liberal terms to become members of the club. Ordinarily clubs organized for social purposes and mental improvement are somewhat exclusive and the initiation fee and dues go into the common treasury to meet the social expenses of the club, and members do not in any way receive back the fees and dues paid, except in social enjoyment; but here we have a club which has an initiation fee of one dollar, but in return the applicant for

membership receives a coupon with tickets which will insure him ten drinks of whiskey or twenty glasses of beer. There is another striking difference between the ordinary social club and "The King Knob Club." In the former persons applying for membership are required to have a certain standard of social standing and moral character, and are voted in by the unanimous, or fixed majority of all the members voting on the application of the candidate; but in the case of "The King Knob Club" the only qualification required of the applicant is to pay the one dollar and receive his tickets for the drinks, and these coupons and tickets can be purchased from the general manager or bar keeper by the members in unlimited quantities. There is no restriction even as to location or residence of proposed members, a traveler passing, or any other person can call upon the secretary and president at the headquarters of the club, pay his dollar, get his card of membership and with his coupon and tickets furnished him in return for the one dollar "initiation fee" repair to the bar of the club and receive his drinks in exchange for the tickets. In *State* v. *Shumate,* 44 W. Va. 490, syllabus, it is held: "Under section 1, chapter 32, Code, it is unlawful for a literary and social club, without first obtaining a State license therefor, to sell, offer, or expose for sale, to its members, spirituous liquor, wine, porter, ale, or beer, or any drink of a like nature."

For the reasons herein stated the decree is reversed and the demurrer to the bill sustained, the cause is remanded to the circuit court of Barbour county with directions to take further proceedings therein as herein indicated.

*Reversed.*

BRANNON, JUDGE, *(concurring)*:

In *State* v. *Parkersburg Brewing Co.,* (45 S. E. 924), 53 W. Va. 591, this Court held that an indictment under the same statute involved in this case was bad in merely saying that the defendant sold liquor contrary to law. The opinion by JUDGE MILLER in that case gives very satisfactory reasons for our decision in it, and, as we think, furnishes a vindication of the position of the majority of the Court in this case, though the present is a bill in chancery and that was an indictment. The

very same act under the same statute constitutes the same offense, public nuisance, and for it the statute gives two remedies, the one by indictment, under which three penalties may be imposed, fine and imprisonment and abatement of the nuisance, the other abatement of the nuisance, and the penalty under the chancery jurisdiction is very severe, as it closes a man's business, deprives him of the use of his house for a certain purpose, and deprives him of a livelihood. We do not condemn the statute. We use these remarks about it only to show that the severity of the penalty calls for full, fair notice of the particular acts wherein the unlawful sale consists, because unlawful sale may be in many ways, sales without license, sales on Sunday, to infants, to habitual drunkards and other ways. Fair notice of the act making the offense is required by principles of criminal pleading. Besides, when the very same act is made the ground of penalty both on indictment and bill, why require the specification in the one case and not in the other?

PRESIDENT POFFENBARGER and JUDGE MILLER concur in this opinion.