STATE OF MISSOURI, Respondent, v. STANLEY E. ROBINSON, Appellant.

Kansas City Court of Appeals, April 1, 1912.

1. LOCAL OPTION: Sales of Liquor. The defendant was the steward of a *bona fide* fraternal beneficiary association, incorporated, that sold liquor to its members in a county where the Local Option Law had been adopted. He was convicted of selling intoxicating liquor to one of the members of the association. *Held*, that the sale by defendant was a violation of the statute.

2. ——: ——: Sale by Agent. A person cannot escape punishment for an infraction of the criminal laws on the plea that he was not acting for himself, but as the agent for another.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

O. F. *Matthews* and *George N. Davis* for appellant.

*Roy W. Rucker* for respondent.

JOHNSON, J.—On information filed by the prosecuting attorney of Chariton county defendant was tried and convicted on the charge of selling intoxicating liquor in violation of the Local Option Law which is admitted to have. been in force in Chariton county at the time of the alleged offense. A jury was waived and the cause was tried on an agreed statement of facts. After unsuccessfully moving for a new trial and in arrest of judgment, defendant brought the case here by appeal.

The facts thus may be stated. The order of "Clover Leaves" is a fraternal beneficiary association incorporated under the laws of this state. That it is a *bona fide* fraternal order and was not organized or conducted for the purpose of evading the liquor laws of the state is conceded and the sole question for our decision is whether an incorporated secret order may serve intoxicating liquors to its members at a lodge maintained in a local option county. In some of the local lodges of the "Clover Leaves" such liquors were served and in others they were not. The lodge at Sumner, a town of six hundred inhabitants, in Chariton county, belonged to the former class and defendant was the steward of the lodge and, as such, made the alleged sale. The stock of liquors, cigars, and food for lunches dispensed by the steward to members was provided by the lodge and paid for out of its treasury. No one but members was admitted to the lodge rooms

and members were not allowed to pay the steward for refreshments. To obtain refreshments a member was required to purchase from the secretary a card at the cost of one dollar and tender the card to the steward in payment or drinks, cigars or lunches. The card had ten places for punch marks, each place representing ten cents and the steward punched on the card enough places to cover the price charged for refreshments served to the holder. When a card had received ten punches its purchasing power was exhausted and the holder was required to buy another card. The revenue derived from the sale of cards was used by the lodge to keep up the stock of the buffet, to pay the steward, and to pay lodge expenses. No part of the revenue was divided among the members.· The sale under consideration was made to a member of the Sumner lodge at the lodge rooms and in the manner described.

There can be no question of the power of. government to regulate, control, or prohibit· the sale of intoxicating liquors. The policy of this state disclosed in the dramshop and local option acts is to give to the people of each county or city containing over 2500 inhabitants the option of permitting the continuance of the sale of intoxicating liquors at retail in the county or city under the restrictive and regulatory provisions of the dramshop act or of prohibiting such sales entirely. When a county adopts what is popularly called "local option," i. e., county prohibition, the dramshop act no longer applies to such county, since the policies of prohibition and of license are too antagonistic in principle to exist at the same time in the same political subdivision. The Local Option Law provides (section 7243, Revised Statutes 1909):

"If a majority of the votes cast at any election held under the provisions of this article shall be 'against the sale of intoxicating liquors,' it shall not be lawful or any person within the limits of such county

(lying outside of the corporate limits of any city or town having, at the date of such order of election, a population of twenty-five hundred inhabitants or more) or city, as the case may be, to directly or indirectly sell, give away or barter in any manner whatever, any kind of intoxicating liquors or beverage containing alcohol, in any quantity whatever, under the penalties hereinafter prescribed." And in section 7246, it is provided that "any person violating the provisions of this article shall be deemed guilty of a misdemeanor," etc.

By the provisions of these statutes it is made a misdemeanor for any person directly or indirectly to sell, give away, or barter intoxicating liquor in any quantity in a local option county. That a corporation may sell liquor in violation of this prohibition is a proposition about which there can be no reasonable contention; and though a corporation is not a person within the meaning of the word as employed in these statutes and, therefore, as an artificial entity cannot be convicted of a violation of the law in a criminal prose- cution, still its officers agents and servants who make sales of intoxicants on its behalf and in violation of the law, fall within the purview of the term "to directly or indirectly sell" and may be tried and if found guilty convicted under the penal provisions of the statutes. It is a familiar rule of law requiring no ref- erence to authorities, that a person cannot escape punishment for an infraction of the criminal laws of the land on the plea that he was not acting for him- self but as the agent of another. Therefore, if the transaction under consideration amounted to a sale of intoxicating liquor by the incorporated fraternal association (the lodge), defendant, as the agent by whose hand the law was violated, must suffer for the offense.

There is nothing in the decision of the Supreme Court in State ex rel. v. St. Louis Club, 125 Mo. l. c.

317, at variance with what we have just said. The action in that case was for an alleged violation of the dramshop act and it was held that a corporation was not "a person" within the meaning of that act, but it was not said that a corporation, through its agents, could sell intoxicants in defiance of the law. The opinion in that case is controlling authority for the proposition that an incorporated club, in a city under the dramshop act, which in good faith and merely in an incidental way, serves liquors to its members, is not guilty of a technical sale of intoxicating liquors under the dramshop act. We quote from the opinion:

"Applying the test that commends itself to our best judgment, in view of the conflict in the decisions, we think that where a social club as in this case is clearly a *bona fide* organization, with a limited membership, and admission into which cannot be obtained by any person at his pleasure, and its property is actually owned in common by its members; a distribution of wine or other liquors belonging to such club, among its several members, is not a sale of liquor by retail or in original packages within the meaning and purview of our dramshop act, although technically the act does amount to a sale for some purposes. The *bona fides* of the organization is in each case a question for the court or the jury under proper instructions of the court."

It will be noted that the court is careful to say that the transaction in question was "not a sale of liquor . . . within the meaning and purview of our dramshop act" and when carefully analyzed the opinion discloses a manifest purpose to preserve a distinction in the interpretation of the Dramshop and Local Option Laws. Thus on page 328, the opinion disposes of cases in Maryland and North Carolina which hold that transactions similar to that before the

163 App.—15

Supreme Court were sales, by saying that those decisions involved the "construction of the Local Option Law which absolutely prohibited any person whatever from selling in the county in which the action arose." And in the final paragraph of the opinion the court say "we are constrained to adopt the view that the club's manner of furnishing its members wines and liquors is not a sale at retail or in an original package *within the meaning of the Dramshop Law.*" We assert with confidence that the scope of this decision expressly and intentionally was limited by its author to cases involving a construction of the Dramshop Law and was not intended to extend to cases falling within the purview of the Local Option Law. The decision is in perfect accord with the public policy expressed in the Dramshop Law which, for purposes of revenue, tolerates and, we might add, encourages the liquor traffic. In the interpretation of statutory language the meaning must be given that is most consonant with the policy or obvious purpose of the statute and with this canon of construction in mind we do not hesitate in saying that the transaction in question was a sale of intoxicating liquor. The prime object of the local option act is prohibition. It regards the traffic in intoxicating liquors as *contra bonos mores,* as hostile to the welfare of the community and, therefore, as an evil to be extirpated. On the other hand the Dramshop Law regards the traffic as lawful and beneficial when properly regulated and controlled. In the one view the serving of liquors for pay by an incorporated social or fraternal club or lodge to its members in an incidental manner would not be opposed to the policy of the law while under the opposite view, it would be contrary to the policy of the law and would constitute an offense against the public morals and a defiance of the public will.

Referring again to the opinion in State ex rel. v. The St. Louis Club, we find this expression:

"In those states where the laws are prohibitory, as might be expected, a most rigid line of adjudication is to be found. On the other hand where the enactments on this subject have been in the main police and revenue regulations a less stringent line of decisions has been rendered. In each jurisdiction, the courts have been governed by the statutes themselves, and have endeavored to construe them so as to effectuate the intention of the Legislature."

Where, as in this state, the laws recognize the principle of local self-government and provide for optional prohibition, it is obvious that in communities where prohibition is adopted the statutes should be interpreted, as far as their language reasonably will permit, to give effect to the principles of that policy. Guided by these rules, how may it be said in reason that the transaction before us was not a sale? A corporation as an entity may deal with its stockholders or officers, may enter into contracts of sale with them, and there is no reason that can be perceived for saying that a corporation may sell dry goods to one of its stockholders but cannot make a sale of whiskey. The member paid for his liquor and the lodge received the money and used it for the purposes of the corporation. As is well said in State v. Lockyear, 95 N. C. 635:

"There can be no question that in a strict legal sense, the transaction described in the verdict is a sale of spirituous liquors. All the elements of an executed contract are present. The corporate body, a legal entity, and the owner of the liquor, through its servant, the defendant, delivers it to the purchaser at his call and receives a fixed compensation in money therefor. The property in the goods passes and vests in the purchaser, and the money paid is received for and becomes the property of the club. Can there be any doubt that a corporation may make contracts and deal with a corporator, precisely as with a stranger,

and valid obligations, capable of enforcement, be thus formed between the parties?

And is not this dealing with the prohibited subject directly within the terms of the statute and does it not open the door to the mischiefs intended to be suppressed? It is not necessary that the vendor should be authorized to sell to anyone, and the fact that customers must be members of the association, does not relieve him of criminal responsibility under the mandatory statute."

We regard this as a correct exposition of the law applicable to the case in hand. A sale of intoxicating liquor was made by defendant in violation of the statute.

Our attention is called to the case of State ex inf. Hadley v. Athletic Club, 121 Mo. App. 81, decided by the St. Louis Court of Appeals. The view expressed in that case of the scope of the decision of the Supreme Court in the St. Louis Club case was not essential to the determination of the case before our sister court and, therefore, we do not consider that the different view we have expressed calls for the transfer of this case to the Supreme Court.

The judgment is affirmed. All concur.