STATE OF MISSOURI, Respondent, v. ALBERT ZEHNDER, ADALBERT KOLB and FRITZ DIIRR, Appellants.

Springfied Court of Appeals, June 16, 1914.

1. **INFORMATION: Verified by Oath: What Sufficient.** An information was signed by the prosecuting. attorney and a notary public certified under his seal that the prosecuting attorney made oath thereto that the facts therein set out were true, etc. It fulfilled the requirements of section 5057, R. S. 1909, that an information shall be verified by the oath of the prosecuting attorney or some one competent to testify as a witness, though the attorney did not sign the affidavit.

2. **NOTARIES PUBLIC: Authority to Administer Oaths: Acts Authenticated: Received in Evidence.** Notaries public are authorized to administer oaths (Sec. 10178, R. S. 1909) and their acts must be authenticated with their official seals (Section 10180, R. S. 1909). When thus authenticated such acts shall be received in evidence (section 10180, R. S. 1909).

3. **NOTARIES PUBLIC: Their Seals: Judicial Notice Taken of.** Notaries public, being officers recognized by the commercial law of the world, the courts will take judicial notice of their seals.

4. **LOCAL OPTION LAW: Violations of: Information: Sufficiency.** An information charging that at the time of the alleged violation of the Local Option Law "the provisions of Art. 3, chapter 63, R. S. 1909, known as the Local Option Law, was in full force and effect in the aforesaid county" *held* sufficient, there being·no necessity to charge that same had been adopted, since it could not be "in full force and effect" unless it had been adopted.

5. **LOCAL OPTION LAW: Violation: What Constitutes.** Where a person purchases from one person a ticket or other such device to be punched or exchanged for intoxicating liquors, and another person having charge of such liquors recognizes the

purchasing value of such ticket and exchanges such liquors for the same by taking up the ticket or marking it or punching it so as to destroy or diminish its purchasing value *pro tanto*, such transaction is a sale of the liquors and the person selling the ticket and the one dispensing the liquor are both guilty.

6. MISDEMEANORS: No Accessories Before the Fact in: All Principals. In misdemeanors there are no accessories before the fact, but all who aid, abet or assist in an illegal sale of liquors are principals and equally guilty with the actual seller.

7. INSTRUCTIONS: Local Option Law: Violations: Who Liable. An instruction is upheld which charged the jury that if defendants who were officers of a certain club in local option territory aided and assisted a third party, the bar tender, in making sales of liquor in violation of law, either by receiving the liquors to be sold or by selling tickets to be used for that purpose, they were equally guilty.

8. LOCAL OPTION LAW: Instructions: Wrong Theory. Although there is evidence on which one defendant might have been convicted by reason of aiding in the unlawful sale of intoxicating liquors by signing tickets to be sold and used for that purpose, yet where the instructions did not submit that theory to the jury, a conviction cannot be upheld on an instruction submitting another theory as to aiding in a different manner which is unsupported by any evidence.

9. LOCAL OPTION LAW: Violation: Evidence Reviewed: Verdict Sustained as to One Defendant but Not as to Another. In a prosecution for violation of the local option law evidence examined and reviewed and considered sufficient to sustain a conviction as to one defendant but not as to another. (ROBERTSON, P. J., dissenting).

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED IN PART. REVERSED AND REMANDED IN PART.

*Frank H. Farris, J. J. Crites* and *J. A. Watson* for appellants.

(1) The information in this case was not verified as required by law, and the attention of the court was called thereto by a timely motion to quash, which motion was overruled and exceptions saved. The case should be reversed. Sec. 5057, R. S. 1909; State v.

Bonner, 178 Mo. l. c. 431; State v. Hicks, 178 Mo. l. c. 445; State v. Branch, 178 Mo. l. c. 412; State v. Schnettler, 181 Mo. l. c. 185; State v. Brown, 181 Mo. l. c. 233; State v. McGee, 181 Mo. l. c. 315; State v. Hanigan, 182 Mo. 15; State v. Decker, 182 Mo. l. c. 184; State v. Gutke, 188 Mo. 424; State v. Kelly, 188 Mo. 450; State v. Lee, 113 Mo. App. l. c. 203; State v. Weyland, 126 Mo. App. l. c. 726. (2) An indictment must contain pointed and specific allegations that the Local Option Law had been adopted and was in force at the time of the alleged sale, for it is material both to allege and prove these things. State v. Hall, 130 Mo. App. l. c. 172; State v. Campbell, 137 Mo. App. l. c. 108; State v. Wright, 161 Mo. App. l. c. 600-601; State v. Gemy, 39 Mo. App. l. c. 399; State v. Hutton, 39 Mo. App. l. c. 416; State v. Prather, 41 Mo. App. l. c. 458; State v. Dougan, 110 Mo. l. c. 143; State v. Wainwright, 154 Mo. App. 654. (3) A fraternal corporation can in good faith dispense liquors to its members without violating any law in Missouri, prohibiting the sale of intoxicating liquors, including the Local Option Law, unless it can be shown that the society or corporation is a mere scheme to sell liquors in defiance of law and this is an issue of fact to be submitted to a jury. State ex rel. v. Pastime Athletic Club, 121 Mo. App. l. c. 86; State ex rel. v. St. Louis Club, 125 Mo. l. c. 319, 320; State ex rel. v. Rod & Gun Club, 121 Mo. App. l. c. 373.

*Corrie L. Arthur,* Prosecuting Attorney, and *C. C. Bland* for respondent.

(1) The motion to quash was properly overruled. State v. Webster, 206 Mo. l. c. 576; State v. Hicks, 178 Mo. l. c. 445; State v. Fletcher, 31 Mo. App. 296; State v. Prewett, 61 Mo. App. l. c. 159. (2) The certificate of the notary attested by his hand and seal of office to the oath of the prosecuting attorney to the informa-

tion imparted the same verity as would the certificate of the clerk of the court attested by its seal. Sec. 10178, R. S. 1909. State v. Boland, 12 Mo. App. 74; Barhydt & Co. v. Alexander & Co., 59 Mo. App. 1. c. 194. (3) The statement in the information that the Local Option Law was on the first day of April, 1913, and at all times hereinafter mentioned in full force and effect in the county, was equivalent to a statement that it had been adopted by the voters of the county, went into effect on April 1, 1913, and was in effect on the date the offense was committed. State v. Campbell, 137 Mo. App. 105; State v. Gallatine, 161 S. W. 848; State v. Brown, 151 Mo. App. 349. (4) The information stated all the essential facts and was sufficient. State v. Hall, 130 Mo. App. 170; State v. Merget, 129 Mo. App. 46; State v. Watson, 216 Mo. 426, 431. (5) The sale of intoxicating liquors by the officers or agents of an incorporated club or of a voluntary association in local option territory is illegal. State v. Robinson, 163 Mo. App. 221; State v. Meyers, 162 S. W. 768; State v. Harp and Gehson, 210 Mo. 254; State v. King Knob Club (W. Va.), 46 S. E. 799; Southern Shore County Club v. People, 228 Ill. 75, 119 Am. St. Rep. 417, 81 N. E. 805; State v. Esline Social Club, 73 M'd. 97, 20 Atl. 783; Mahrn v. State, 105 Ga. 709, 32 S. E. 143; City of Chicago v. Mitcher, 183 Ill. 104, 55 N. E. 707. (6) The sale of cards with figures thereon, to be used for purpose of purchasing beer and whiskey, a figure corresponding to the price of the beer and whiskey, being punched out at the time the liquor was furnished was a sale of the liquor so furnished. State v. Harp, 210 Mo. 210; State v. Robinson, 163 Mo. App. 221; State v. Harach, 41 Kas. 87; People v. Law and Order Club, 203 Ill. 127, 67 N. E. 853. (7) There are in misdemeanors, no accessories before the fact. All are principals and may be charged in the indictment as principals. 1 Bishop New Criminal Law, Sec. 655, page 417; Bishop on Statutory Crimes (3 Ed.), Sec.

1024, p. 665; State v. Keeth, 46 Mo. App. 612; Slaughter v. State, 113 Ga. 264, 38 S. E. 854; Reynolds v. Publisher, etc., 155 Mo. App. 612.

STURGIS, J.—The defendants were convicted of violating the Local Option Law theretofore adopted in Phelps county, Missouri, in selling intoxicating liquors in Rolla at a place called the Germania Verein, and have appealed.

The information was attacked by a motion to quash same, which was overruled, exceptions saved and error is assigned thereon here. The objections made to the information is that it was not filed on the official oath of the prosecuting attorney, or on the official oath of any other officer or body authorized to file the same, and was not verified as required by law. The information is signed by the prosecuting attorney, Corrie L. Arthur, and then follows: "Corrie L. Arthur, Prosecuting Attorney, being sworn, upon his oath says the above and foregoing information and the facts therein stated are true according to his best knowledge, information and belief. Subscribed and sworn to before me, the undersigned notary public, this sixth day of December, 1913. Clark C. Bland, Notary Public."

The appellants contend that section 5057, R. S. 1909, which provides that an information shall be verified by the oath of the prosecuting attorney or by the oath of some person competent to testify as a witness has not been complied with in this case and rely on the case of State v. Bonner, 178 Mo. 424, 431, 77 S. W. 463, and a line of cases based thereon. In the Bonner case, supra, and in all the similar cases to which we have been cited by appellants, there was no evidence or pretense that the information had been sworn to by the prosecuting attorney. In the case of State v. Hicks, 178 Mo. 433, 445, 77 S. W. 539, this same point was raised and in discussing the necessity of a verification by the prosecuting attorney or some

competent witness to the information, it is said that "the *affidavit* is not required to be *signed by him*. It will be observed that the information was in fact signed by the prosecuting attorney, and the clerk of the court in which it was filed having certified under his hand and the seal of the court that the 'prosecuting attorney makes oath and says that the facts stated in the information are true, according to his best knowledge, information and belief,' it was a substantial compliance with the statute." In that case, as here, the information was signed by the prosecuting attorney and the clerk of the court in which it was filed certified under his hand and the seal of the court that the prosecuting attorney made his oath thereto that the facts there alleged were true, according to his best knowledge, information and belief, and the information was held good. That case involved a prosecution for murder in which defendant was convicted in the second degree. The present case is sought to be distinguished from the holding of the Supreme Court in the Hicks case, supra, in this that in that case an officer, of whose official signature and seal the court must take judicial notice, certified that the prosecuting attorney had made the required oath to the information, while here such certification is by a notary public attested by his seal.

The only question to be solved here in disposing of this objection is whether or not in case a notary public of the county has certified under his hand and seal that the required oath was administered, the court should import to his act the same verity as was accorded in the Hicks case to the act of the clerk of the court where the case was pending. Section 10178, R. S. 1909, authorizes notaries public to administer oaths, and Section 10180, R. S. 1909, requires them to authenticate their acts with their official seal, and provides that when so authenticated they shall be received in evidence. In Brown Mfg. Co. v. Gilpin, 120 Mo. App. 130, 134, 96 S. W. 669, it is said, as to an affidavit for

an appeal made before a notary public in another State, that: "Courts will take judicial notice of the seals of notaries public, for they are officers recognized by the commercial law of the world." See also State v. Boland, 12 Mo. App. 74. We are of the opinion, therefore, that the record discloses in the case at bar that the information in this case was duly sworn to as required by law.

Another objection urged against the information by appellants is that the charge therein that "on the first day of April, 1913, and at all times hereinafter mentioned, the provisions of Article 3, Chapter 63, R. S. 1909, known as the Local Option Law, was in full force and effect in the aforesaid county of Phelps," is insufficient and that it is essential to a good information under the Local Option Law to charge that such law *had been adopted* and was in force at the time of the alleged sale. The appellants rely on a number of cases, State v. Searcy, 39 Mo. App. 393, 399, State v. Hutton, 39 Mo. App. 410, 415, State v. Dugan, 110 Mo. 138, 143, 19 S. W. 195, which in discussing the necessary averments in this regard, state that an information is *sufficient* which alleges that the Local Option Law *had been adopted* and was in force at the time of the alleged sale. Such holding, however, is different from holding that such averment is essential. We are unable to understand by what process of reasoning, if the Local Option Law was in full force and effect in Phelps county, it could be argued that it had not been adopted. In State v. Campbell, 137 Mo. App. 105, 108, 119 S. W. 494, where the information did not allege that the Local Option Law had been adopted, but did allege that said law " 'was legally approved by the people of Dallas county and went into force and effect in said county on the 15th day of June, 1906, which law has been in effect from and since said date and is at this time in force . . . did then and there unlawfully sell,' etc.," the court said: "But we think

the indictment is sufficient notwithstanding it fails to use the word, adopted. To say that the people adopted the Local Option Law is but the statement of a conclu-sion to the effect that it was in force in the county. And the statement that the law was in force in the county at the time is equivalent to saying that the people had adopted it." Many of the cases relied on by the appellants involve the discussion where the point was made that although it was alleged that the Local Option Law had been adopted, yet it was not suffi-ciently alleged that at the time the offense was charged to have been committed the law was yet in force. [State v. Hall, 130 Mo. App. 170, 172, 108 S. W. 1077; State v. Jump (Mo. App.), 162 S. W. 633.] A reading of these cases will show that the court regarded the allegation as to the law being in force as being the essential averment, the absence of which made the in-formation bad in those cases. The law cannot be in force without having been adopted and so it is usual to allege that it has been adopted and is in force, but no information has been held bad for want of the averment that it had been adopted. If on the date charged in the information in the case at bar the Local Option Law was in force, it must of necessity have been previously adopted, otherwise it could not be in force at that time. As stated in State v. Hutton, 39 Mo. App. 410, 416, it may not be sufficient to merely allege that the Local Option Law had been adopted because it may not have been put in force by a com pliance with the statute as to subsequent publication, etc., or it may have been repealed and consequently it is essential to allege the fact or such facts as show that on the date the offense is charged to have been committed the law was in force. In the case of State v. Prather, 41 Mo. App. 451, 458, it is said "It is only the substantive facts—those facts necessary to be proved—which need be alleged." Neither the case of State v. Wainwright, 154 Mo. App. 653, 136 S. W. 25,

nor the case of State v. Dugan, 110 Mo. 138, 19 S. W.
195, cited by the appellants, announce a doctrine con-
trary to that announced here, because in the former
case the question of the discrepancy between the date
of the alleged adoption and the date of the alleged
offense was so involved that the defendant "now in-
sists that the information is insufficient, in that it
fails to charge that the Local Option Law was in force
in Shannon county at the date of his alleged offense;"
and in the latter case it is said that the indictment
need only have alleged the adoption as of one date
and the commission of the offense as of the other date
and at a time when the law was in force. It is not
there held that to simply allege that the law was in
force on the date the crime is alleged to have been
committed makes a bad information. In State v. Brown,
151 Mo. App. 349, 350, where an indictment did not
allege the adoption, but charged that on the date when
the offense was committed the Local Option law was in
full force, the court said: "We find the indictment
sufficient in all respects and the only issue in the case
was whether or not defendant sold the liquor as
charged." We, therefore, hold that the information in
this case is sufficient in this respect.

The evidence discloses that the Local Option Law
was adopted and went into force about March 1, 1913,
and that beginning in October of that year large and
numerous shipments of beer and other liquors were
consigned to and delivered at a place designated as the
Germania Verein in a building theretofore occupied
by a saloon and where there was maintained a regular
bar, over which were dispensed intoxicating drinks.
It is also disclosed that in connection with the busi-
ness there conducted was what is sometimes called the
"German-American Alliance," which is another name
for Germania Verein. On the same floor of that build-
ing and connected with the room in which the bar was
located was a kitchen from which was conducted a res-

taurant in the room where the bar was located. This Germania Verein appears to have been an association composed of members who paid $1.50 for their membership cards. This is spoken of as a corporation in the statement and argument, but there is no proof of that fact shown by the record in this case. The method of operation appears to have been that tickets were issued bearing the signature of the defendant Diirr, upon the margin of which was printed a series of figures representing the purchasing value at the Verein and totaling in amount the sum paid therefor. The tickets bearing the signature of Diirr were sold by the defendant Kolb. These tickets were sold only to members and were punched at the Verein in exchange not only for lunches, cigars and soft drinks, but also for intoxicating liquors, at the will of the holder. The defendant Zehnder was the man in charge of the bar and restaurant, waited on the customers and punched these tickets.

The offense for which the defendants stand convicted and from which the appeal was taken was committed, if at all, by the defendant Diirr signing and validating these tickets, the defendant Kolb selling and delivering the tickets to the purchasers who were witnesses herein, and these parties procuring from the defendant Zehnder intoxicating liquors over the bar at the Verein, for which the defendant Zehnder punched from the tickets the numbers on the margin representing the value of the purchase and showing a like reduction in the purchasing value of the tickets.

At the close of the evidence the court gave an instruction declaring in effect that the Local Option Law was in force in Phelps county in November, 1913; that it was unlawful to sell intoxicating liquors therein at such time, and if the defendants sold intoxicating liquors in said county during that time the jury should find them guilty. Then the court gave these instructions: "2. The court instructs the jury that if you

believe and find from the evidence that the defendant Albert Zehnder delivered to any of the witnesses who have testified in this case a pint of beer, and such witness had with him at the time a ticket with figures thereon, and if the said witness had purchased the said ticket from any other person and paid for the same any sum of money, and if at the time of receiving the said beer from the said Zehnder, such witness presented the said ticket to the said Zehnder and he, Zehnder, punched therefrom the figures representing a sum of money as the price of such beer, then such transaction would be a sale of the beer to the same extent as if said witness had paid the said Zehnder the money for the beer at the time he received it.''

''3. The court instructs the jury that if you believe and find from the evidence that the defendant Albert Zehnder sold to any of the witnesses a pint of beer as set forth in the first instruction herein given, and at the time and place stated in such instruction, and if you further believe from the evidence that the defendants Adalbert Kolb and Fritz Diirr knew of the fact that the said Zehnder was selling intoxicating liquors and aided, advised and assisted in the making of such sale to the said witness, as aforesaid, if you find he made one, either by procuring the said whisky for the said Zehnder with the intent that he should sell the same to such witness, or by selling to the said witness a ticket, with figures marked or printed thereon, with the intent and purpose that said witness might present the said ticket to the said Zehnder and get beer thereon, and have the figures on said ticket representing the value of such beer punched therefrom, then said defendants, in such case, would be liable for the making of such sale to the same extent as if they had made the sale themselves.'' It is urged that these instructions do not properly declare the law and are in conflict with an instruction given for defendant, which it is not necessary to copy.

We think that instruction numbered two is without error. Where a person purchases from one person a ticket or other such device to be punched or exchanged for intoxicating liquors and another person, having charge of such liquors, recognizes the purchasing value of such ticket and exchanges such liquors for the same by taking up the ticket or punching or marking it so as to destroy or diminish its purchasing power *pro tanto,* such transaction is a sale of such liquors and both the person selling the ticket or other device and the person dispensing the liquors thereon are equally guilty. Such transaction amounts to a sale and the law has no difficulty in looking through such shams and declaring the result. [State v. Harp, 210 Mo. 254, 109 S. W. 578; State v. Tindall, 40 Mo. App. 271; State v. Robinson, 163 Mo. App. 221, 146 S. W. 456; Cohen v. King Knob Club (W. Va.), 46 S. E. 799.]

The third instruction, connecting defendants Kolb and Diirr with the sale in this manner, proceeds on the theory that if defendant Zehnder sold beer to any witness in the manner described by punching a ticket previously purchased for that purpose and that defendants Kolb and Diirr, knowing of his being engaged in so selling, aided and assisted in making such sale either (1) by procuring the liquors to be sold to the witness, or (2) by selling the witness a ticket to be used for that purpose, then such defendants are also guilty of making the sale. This instruction is very properly based on the rule that in misdemeanors there are no accessories before the fact but all who aid, abet or assist in the illegal sale of liquors are principals and equally guilty with the actual seller. [State v. Keith, 46 Mo. App. 525; Reynolds v. Publishers, 155 Mo. App. 612, 620, 135 S. W. 103.] The evidence in the case shows that defendant Kolb sold the tickets which were accepted by Zehnder as a legal tender for intoxicating liquors. The defendants challenge the sufficiency of the evidence to show that defendant Diirr actually

signed any of these tickets, but we think the evidence sufficient to take that question to the jury. It is not contended, however, that in a criminal case the mere fact that the tickets bore his name, written thereon, is sufficient to warrant his conviction without further proof of his having signed the same. But, such other proof was produced.

Defendants concede that "there is one theory upon which this case can be prosecuted and a conviction had, and that is this: That there was an understanding and agreement, in other words, a conspiracy between these appellants, by the terms of which, cards should be issued by the one, these cards sold by another and he to receive the cash, and the third to take up the cards as issued and sold by the other two, and deliver liquors thereon." Certainly the above instructions submit this theory to the jury so far as defendants Kolb and Zehnder are concerned and the evidence is abundantly sufficiently to warrant their conviction. The instruction warrants the conviction of Kolb in case the jury found that Zehnder sold the liquors on tickets purchased by the witness to be so used, provided Kolb, with knowledge that Zehnder was selling same, aided and assisted in the sale by selling the tickets to such witness for that purpose. In fact, the evidence shows, without contradiction, that Kolb sold the tickets to each and every witness testifying and there is no evidence as to any one else selling the same and, while the second instruction does not name Kolb as the seller (which would have been better), yet in defining what constitutes a sale by Zehnder it requires a finding that such witness had purchased said ticket from *some person* and paid for same and this unmistakably points to Kolb and includes a finding that he sold the tickets.

As to defendant Diirr, there is no evidence that he sold any tickets, and, while there is evidence warranting a finding that he aided and assisted in the

sale by signing and validating the tickets, yet the instructions mentioned do not submit that issue to the jury and do not predicate his conviction on a finding of that fact. The instructions confine the acts of aiding and abetting to either procuring the liquors to be sold by Zehnder or to selling the tickets to be cashed by him. The evidence will not sustain a conviction as to Diirr on either of these theories. There is no evidence as to his selling any tickets. The only evidence as to his having procured any liquor to be sold is that of a drayman who testified that he delivered several consignments of liquors to the Verein and that each of the three defendants paid freight thereon at different times. There is nothing, however, to show when defendant Diirr paid such freight or on what consignment, or the kind of liquors contained therein. The evidence in this respect is that this witness was shown a number of freight receipts which he identified as having delivered the goods covered by same to the Germania Verein and collected the freight. The witness was then asked: "What particular individual did you deliver them to; who was in there to receive it; who paid for the freight?" To which he answered, "There was two or three which I don't remember; there was Albert Zehnder, too, and there was Sachs and there was Fritz Diirr and this cripple fellow, Kolb." Witness was then asked: "Q. All of them paid you? A. Yes, sir." Witness then testified that he delivered the freight called for to the club in the Strobach building on Eighth street, and delivered it in the back way. That he delivered it in the back way on the request of Mr. Zehnder; that there was a sign on the window on the front of the building, "Members Only," and that all of the stuff was delivered at the same place. These freight receipts are in evidence and show that numerous shipments of liquors, both whisky and beer, were shipped to and consigned to "Germania Verein" and are variously dated in Oc-

tober, November and December, 1913. The man Sachs, mentioned by the witnesses as paying freight, was originally a defendant but was discharged at the close of the evidence because the trial court thought this evidence not sufficient to connect the liquors on which he paid freight with the particular sales by Zehnder proved at the trial. We think the trial court was right in this, and, as this was the only evidence against the defendant Diirr supporting the theory on which his case was submitted to the jury, we hold it insufficient as to him also. To hold otherwise would be to say that because Diirr paid freight on one shipment of liquor, without showing the date or kind or quantity of liquor, he can be convicted of any and all sales made by Zehnder of any kind of liquor at any time.

It is not necessary for us to say whether the instruction would have been good without specifying the acts done or the manner of aiding and abetting in the sale. The court did so specify and the defendant Diirr's guilt must be determined by the matters which the jury were directed to pass on, to-wit, whether he aided and abetted by procuring the liquors which were sold or sold the tickets used in effecting said sale. There is no sufficient evidence of these facts so far as Diirr is concerned and the conviction cannot stand merely because he might have been convicted on another theory—that of signing and validating the tickets—since that theory was not submitted to the jury.

It results that the judgment is affirmed as to defendants Zehnder and Kolb and reversed and remanded for further trial as to defendant Diirr.

*Farrington, J.,* concurs.

*Robertson, P. J.,* concurs in the disposition of the case as to defendants Zehnder and Kolb, but dissents as to the result reached as to defendant Diirr.