STATE OF MISSOURI, Respondent, v. J. F. WILLS et al., Appellants.

Springfield Court of Appeals, April 3, 1911.

1. CRIMINAL LAW: Violating Local Option Law: Information: Druggists. In a prosecution for violating the Local Option Law the mere fact that defendant is a druggist does not make it necessary to state in the information the name of the party to whom the liquor was sold.

2. ————: ————: Instructions. In a prosecution for violating the Local Option Law, an instruction is *held* erroneous in assuming that Harter's Wild Cherry Bitters, Peruvian Strengthening Elixir and Waukesha Cream Ale were intoxicating beverages; that it was correct to assume that whiskey was an intoxicating beverage, but the question of whether or not the other liquids contained alcohol in any quantity and were capable of being used as a beverage or were sold as a beverage, should have been submitted to the jury.

3. ————: ————: Kind of Liquor Sold to Constitute Offense. It is not necessary to constitute a violation of the Local Option Law that liquor sold must be capable of producing intoxication. It is sufficient to constitute an offense if the liquor sold contained alcohol in any quantity and was sold as a beverage, or was of such a character that it could be used as a beverage.

4. ————: ————: ————: Tinctures and Extracts. It was not the intention of the Legislature to make it a violation of the Local Option Law to sell tinctures and extracts containing alcohol and sold for toilet and culinary purposes, and of such a character as to be incapable of being used as a beverage.

5. ————: ————: Druggists: Prescriptions: Burden on Defendant to Produce Prescription. In the prosecution of defendant, a druggist, for violating the Local Option Law, the state made a

prima facie case by showing the sale of whiskey and if the sale was made upon a prescription, the burden was upon defendant to produce the prescription in court, so the court could determine whether or not it was sufficient to authorize a sale under it. It is not sufficient to merely show that the whiskey was bought upon a prescription, for it is not every prescription that would protect the sale.

6. ———: ———: Evidence: Finding Bottles from Defendant's Store. In a prosecution for violating the Local Option Law, it was held prejudicial error to permit witnesses to testify to having seen bottles behind buildings in various parts of the town, with labels on them indicating that they had come from defendant's drug store and that they had contained alcohol in some per cent; in some instances there being nothing to connect defendant in any way with the bottles found.

7. WITNESSES: Reputation: Party Putting Own Reputation in Issue: Criminal Law. Where it appeared that defendants, in a prosecution for violating the Local Option Law, had put their reputation in issue it was not error to permit defendant's witnesses on cross-examination, to testify that they had heard that negroes could go to defendant's drug store and get whiskey and carry it out to other persons, and that complaints had been made to the justice of the peace that defendants were selling liquor.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

Reversed and remanded.

*O. L. Cravens* for appellants.

(1) The information is defective because it fails to give the names of the persons to whom the alleged sales were made, and the court erred in not quashing it. State v. Martin, 108 Mo. 117. (2) The court committed prejudicial error in permitting Clanton and Bales to testify regarding the empty Peruvian bottles behind the chili stand and behind Tom White's building. State v. Seigenthaler, 121 Mo. App. 510; State v. Fierline, 19 Mo. 380; State v. Roberts, 33 Mo. App. 524; Driver v. State, 85 S. W. 1056; Parish v. State, 89 S. W. 830; Wilson v. State, 136 Ala. 114, 33 Southern 831;

State v. Marshall, 2 Kan. App. 792, 44 Pac. 49; State
v. Hughes, 3 Kan. App. 95, 45 Pac. 94; State v. Neild,
4 Kan. App. 626, 45 Pac. 623; State v. Reynolds, 5 Kan.
App. 515, 47 Pac. 573; Ware v. State, 71 Miss. 204, 13
So. 936; Bailey v. State, 67 Miss. 333, 7 So. 348; Naul
v. Macomb, 70 Miss. 699, 12 So. 903; King v. State, 66
Miss. 502, 6 So. 188; People v. Andrus, 74 App. Div.
542, 77 N. Y. 780; State v. La Rose, 71 N. H. 435, 52
Atl. 943. (3) It was prejudicial error for the court
to allow the state to prove by the justice of the peace
Bales, on behalf of the state, that complaints had been
made to him as an officer that defendants were violat-
ing the Local Option Law, and as to the rumors he had
heard that negroes could go to defendants' drug store
and get whiskey and carry it out to parties. Cobleigh
v. McBride, 45 Iowa 116; Warner v. Brooks, 14 Gray
(Mass.) 107; State v. Fisher, 35 Vt. 584. (4) The
error complained of in instructions No. 3 to No. 10 is
that each assume the liquors mentioned are intoxicating
and that they contained alcohol. State v. Allen, 94
Mo. App. 508; State v. Dilihunty, 18 Mo. 331; State v.
Harris, 209 Mo. 423; State v. Weeden, 133 Mo. 83;
State v. Cooper, 71 Mo. 441; State v. Hecox, 83 Mo. 531;
State v. Castor, 93 Mo. 242; State v. Taylor, 111 Mo.
538; State v. Bonner, 178 Mo. 424; State v. Vickers, 209
Mo. 12. (5) We submit that the jury should have been
allowed to say whether the liquids were capable of being
used as a beverage. State v. Lillard, 78 Mo. 136, 23
Cyc. 58.

*Albert D. Bennett* for respondent.

(1) Point 1 in appellant's brief attacks informa-
tion because it fails to give names of persons to whom
sales were made. It is not necessary. State v. Win-
field, 115 Mo. 428. (2) The facts are clearly proven
and without contradiction that the liquors sold con-
tained alcohol and no rational mind could arrive at
any other conclusion, save and except that they con-

tained alcohol and were used as a beverage. And the rule as to assumptions permits instructions to assume the truth of a fact which is not controverted. State v. Moore, 101 Mo. 316; State v. Priest, 215 Mo. 1; State v. Burk, 131 S. W. 883; Dickson v. Railroad, 104 Mo. 491; Pope v. Railroad, 99 Mo. 400; Carnovshi v. Transit Co., 207 Mo. 263; Orcutt v. Building Co., 214 Mo. 53; State v. Henze, 45 Mo. App. 412; State v. Besheer, 69 Mo. App. 74; State v. Lemp, 16 Mo. 390; State v. Rucker, 93 Mo. 91; State v. Crab, 121 Mo. 564; State v. Pratt, 121 Mo. 571. (3) Term "intoxicating liquor" as used in the Local Option Law (Laws 1897, page 179) embraces any beverage containing alcohol in any quantity whatever, it not being necessary that the beverage contain any particular per cent of alcohol to make it an intoxicating liquor within the Act. State v. Burk, 131 S. W. 883; State v. Gamma, 129 S. W. 734; State v. Bales, 130 S. W. 111. (4) It is immaterial whether Peruvian Strengthening Elixir and Dr. Harter's Wild Cherry Bitters were sold in good faith as a medicine or not. Peruna, where it showed 27 per cent alcohol, is a violation of the law, although druggists selling same believed it to be a medicine. Clement v. Dwight, 121 N. Y. S. 788; State v. Wilson, 80 Mo. 303; State v. Lillard, 78 Mo. 136; State v. Wright, 20 Mo. App. 412; State v. Besheer, 69 Mo. App. 75; State v. Lemp, 16 Mo. 390, 23 Cyc. 58; State v. Steele, 92 S. W. 530; Bradshaw v. State, 89 S. W. 1051; State v. Searcy, 46 Mo. App. 432; State v. Bevans, 52 Mo. App. 132.

COX, J.—Prosecution for sale of liquor in violation of the Local Option Law within the city of Neosho. Defendants were convicted upon the first count in the information and have appealed.

The information contains eight counts all of which are in the same form, and the sufficiency of the information is assailed upon the ground that the names of the parties to whom the liquor is charged to have been sold are not given. It is conceded that ordinarily it is

not necessary in charging a violation of the Dramshop Law or Local Option Law to give the name of the party to whom it is claimed the liquor was sold, but the evidence in this case shows that these defendants were druggists, and it is now contended that being druggists, the same rule would apply to them in a prosecution for sale of liquor in violation of the Local Option Law as would apply in case they were prosecuted under the druggists' law.

It was formerly held in this state that druggists and merchants were each in a class to themselves, and if either of these parties should sell liquor in violation of the law they could only be prosecuted under the particular statute applicable to the class to which they belong. [State v. Piper, 41 Mo. App. 160; State v. Williams, 69 Mo. App. 284; State v. Witty, 74 Mo. App. 550; State v. Steele, 84 Mo. App. 318.] But these cases have been overruled. [State v. Quinn, 170 Mo. 176, 67 S. W. 974.] And since the decision in that case the rule now is in this state that the class idea as applied to druggists and merchants is no longer in vogue unless the prosecutor sees fit to prosecute under the sections applicable to those businesses. The prosecutor has the right to elect under which statute he will proceed. If he proceeds under the local option statute then it is no defense to a prosecution under that statute to show merely that the defendant is a merchant or druggist, but they stand as to that charge just as any other person, and to justify a sale the defendant must show that it was made in conformity to the merchant or drug law. This being true, it was not necessary to state in the information the name of the party to whom the liquor had been sold.

Error is also assigned in the giving and refusing of instructions, and in the admission of testimony.

In a general way the evidence disclosed the fol-

lowing state of facts: Defendants were druggists doing business as partners in the city of Neosho. Certain parties who were witnesses for the state bought whiskey at defendants' store, and also bought what was called Harter's Wild Cherry Bitters, Peruvian Strengthening Elixir, and Waukasha Cream Ale. There was evidence that the Waukasha Cream Ale was sold as a beverage and that some of the other liquor was bought without any statement as to whether it was being bought for medicine or not, and upon some of it, one witness at least, became intoxicated. The evidence on the part of the state further showed that bottles of various shapes and sizes, bearing labels showing what had been in the bottles, were found, and that they had contained alcohol in some per cent, and that they had the name of Wills and Armstrong thereon. These bottles were found scattered around the town at various places behind buildings and supposedly in places to which parties might resort to drink intoxicating liquors. Except in one or two cases there was no testimony to connect defendants with these bottles. On the part of defendants the testimony tended to show that the whiskey sold by them was sold upon prescriptions and that the bitters and other compositions sold by them were sold for medicinal purposes.

In the general instructions the jury were told that if they believed from the evidence that defendants "sold certain intoxicating liquors, drinks and beverages, containing alcohol, to-wit: whiskey, Harter's Wild Cherry Bitters, Peruvian Strengthening Elixir and Waukasha Cream Ale, or other drinks and beverages containing alcohol, you will find the defendants guilty." The objection to these instructions is that they assume that all the compositions mentioned are "intoxicating liquors, drinks and beverages containing alcohol." These instructions are correct as applied to the sale of whiskey, but are erroneous as to the others. The court may assume or may instruct the jury that whiskey, alcohol,

State v. Wills.

wine, beer and all other well known spirituous or fermented liquors are intoxicating, but Peruvian Strengthening Elixir, Harter's Wild Cherry Bitters and Waukasha Cream Ale have not yet reached such a distinction as intoxicating beverages as will warrant the court in taking judicial knowledge that they are intoxicating. The instruction should have submitted to the jury the question whether these liquids contained alcohol in any quantity and were capable of being used as a beverage, or contained alcohol and were sold as a beverage. There was abundant evidence from which these facts might be found, but the strength of the testimony did not warrant the court in assuming the fact to exist, but the determination of the fact should have been left to the jury. The jury were told in another instruction that before they could find defendants guilty the state must prove beyond a reasonable doubt that defendants sold "intoxicating liquor or beverage containing alcohol" but this did not remove the effect of the other instructions in which the jury were practically told that the Cherry Bitters, Peruvian Strengthening Elixir and Waukasha Cream Ale were intoxicating.

Defendants asked and the court refused the following instruction:

"The court instructs the jury that although you may believe from the evidence that the defendants made sales of 'Peruvian Strengthening Elixir,' and that the same contained alcohol, yet if the amount of alcohol therein contained was no more than was necessary to draw out and preserve the medicinal qualities, of the other ingredients therein contained, and on account of the other ingredients therein contained could not be taken in sufficient quantities to produce intoxication, then you should acquit the defendants of said charge."

This instruction embodies defendants' construction of the term "intoxicating liquor" which is, that to be an intoxicating liquor it must be capable of producing intoxication.

In the absence of a statutory definition the term intoxicating liquor is understood to include any liquor intended for use as a beverage, or capable of being so used, which contains such a proportion of alcohol that it will produce intoxication when imbibed in such quantities as it is practically possible for a man to drink. [23 Cyc. 57.] But when the term is defined by statute the courts are bound by the statutory definition, and when the statute includes in the definition of intoxicating liquor "any composition of which spirituous liquor is a part" as our dramshop statute does (section 3016, R. S. 1909), then it is a violation of the law to sell as a beverage any compound containing any alcohol whatever. [State v. Martin, 129 S. W. 93 (Mo.); State v. Intoxicating Liquor, 76 Iowa 243, 41 N. W. 6, 2 L. R. A. 408.]

In the Martin case our Supreme Court quotes approvingly the following language from the Iowa case: "The statute provides that the words 'intoxicating liquors,' as used therein, 'shall be construed to mean alcohol, wine, beer, spirituous, vinous and malt liquors, and all intoxicating liquors whatever.' Alcohol is therefore an intoxicating liquor, regardless of the fact that the quantity drank at any one time would not have that effect. It is immaterial in a statutory sense, what effect alcohol may have on the human system; it is an intoxicating liquor. However much it may be diluted, it must remain an intoxicant when used as a beverage. That is to say, the statute provides that alcohol is an intoxicant whenever and however used as a beverage; and no matter how it may be diluted or disguised, it so remains, simply because the statute so declares." Under the Local Option Law the term intoxicating liquor means the same thing as it does under the dramshop law. [State v. Martin, supra.]

We do not think, however, that it was the intention of the Legislature to put under the ban all compositions containing alcohol. Such, for instance, as tinc-

tures and extracts sold for toilet and culinary purposes, and of such character as to be incapable of being used as a beverage. The evil sought to be remedied by all laws against the sale of intoxicating liquors is the evil that flows from its use as a beverage and the purpose of the Legislature in providing that the term intoxicating liquor shall be construed to mean "fermented, vinous or spirituous liquors, or any composition of which fermented, vinous or spirituous liquors is a part" (section 3016) was to cut off the possibility of the sale of substitutes for the ordinary liquors, and the local option statute, in order to make assurance doubly sure, adds "or beverage containing alcohol in any quantity whatever." As held in the Martin case supra, however, this clause adds nothing to the force of the provision against the sale of intoxicating liquor for all beverages containing alcohol in any quantity whatever are, under our statute, intoxicating liquor whether a person can drink enough of it to produce intoxication or not. Our conclusion is that the term intoxicating liquor, as defined in our statute, means any composition containing alcohol in any quantity which is capable of being used as a beverage.

In a prosecution for violation of the law it is not necessary for the state to show that the liquid, or composition in question, was sold as a beverage. Nor is it any defense to show that it was sold in good faith for medicinal purposes. The only issues that can be raised are the questions whether or not the liquid sold contained alcohol and was of such character that it could be used as a beverage, or that it contained alcohol and was sold as a beverage. If either of these conditions exist and the sale is proven the defendant should be convicted unless it should further appear that the sale was made in conformity to some law authorizing the sale of intoxicating liquor. This instruction was properly refused.

Certain witnesses testified that they bought whiskey from defendants, but also stated that they got it on prescriptions. Some prescriptions were produced by defendants, but not enough to cover all the sales testified to by the witnesses. The jury were instructed that defendants could not be convicted for sales made upon the prescriptions produced, and as applying to the sales of whiskey for which no prescriptions were produced the defendants asked, and the court refused, the following instruction:

"The defendants cannot be convicted in this case for furnishing alcoholic or in toxicating liquors for medicinal purpose because of the failure to produce in evidence written physicians' prescriptions therefor as required by the druggists' act."

This instruction was properly refused. The state made a prima facie case by showing the sale of whiskey and if the sale was made upon a prescription, that was matter of defense, but defendants could not justify, by merely drawing from the state's witnesses, or otherwise proving the fact, that the whiskey was bought upon a prescription, for the reason that it is not every prescription that will protect a sale. The statute expressly provides who may issue a prescription for intoxicating liquor and what the prescription must contain, and a party seeking to justify a sale of intoxicating liquor upon a prescription must, to be successful, show that the prescription complied with the statutory requirements. This can only be done by proof that the party who issued the prescription was at the time a regularly registered and practicing physician and that the prescription contained, in substance at least, the statutory recitals. [State v. Mixdorff, 46 Mo. App. 494; State v. Bowers, 65 Mo. App. 639; State v. Hammack, 93 Mo. App. 521; State v. Manning, 107 Mo. App. 51, 81 S. W. 223; State v. Davis, 129 Mo. App. 129, 108 S. W. 127.] The prescription should be produced so the court may determine whether or not it is sufficient to authorize a

sale upon it.   [State v. Davis, 76 Mo. App. 586.]   And no physician is allowed to issue more than one prescription for intoxicating liquor to the same person at the same time.   [Statutes 1909, sec. 5784.]   And there must be a separate prescription for each sale.

Contention is made that the court erred in permitting certain witnesses to testify that they had heard statements that negroes could go to defendants' drug store and get whiskey and carry it out to parties, and that complaints were made to the justice of the peace by citizens of the city that defendants were selling liquor.   An examination of the testimony developes the fact that defendants put their general reputation in issue, and the testimony aforesaid was brought out on cross-examination of witnesses who had testified in relation to defendants' reputation, and was for that reason proper.

It is also contended that the court committed error in permitting witnesses to testify to having seen bottles behind buildings in various parts of the town with labels on them indicating that they had come from defendants' store,   and   that   they   had   contained some of the articles which defendants were charged with having sold.   In some of these instances there was nothing to connect defendants in any way with the bottles found.   We think the admission of this testimony was erroneous and prejudicial.   One of the questions at issue was whether or not defendants had sold the liquids which these bottles were supposed to have contained, and we do not think such a sale could be proven by proving that empty bottles bearing defendants' labels were found in localities to which persons might resort for the purpose of drinking intoxicating liquor.

The judgment will be reversed and the cause remanded.   All concur.