STATE OF MISSOURI, Respondent v. CARRIE GALLITON, Appellant.

Springfield Court of Appeals, December 11, 1913.

1. LOCAL OPTION LAW: Keeping Liquor for Another: Review of Evidence. In a prosecution for violation of Sec. 7227, R. S. 1909, forbidding keeping for another intoxicating liquors in a county which has adopted the Local Option Law, evidence examined and reviewed, *held* sufficient to sustain conviction.

2. ———: ———: Scope of Word "Keeping." Under Sec. 7227, R. S. 1909, the "keeping for another" of intoxicating liquors need not be such as is connected with an illegal sale in order to constitute a violation of the law.

3. ———: Prima-Facie Case. Every keeping, consciously, for another of intoxicating liquors in a county which has adopted the Local Option Law is prima-facie unlawful, and such keeping admitted, the burden of explanation is put upon the defendant.

4. APPEAL AND ERROR: Criminal Law: Advantageous Instructions for Defendant not Ground for Complaint. In a prosecution for violation of the Local Option Law, an instruction which required of the State more than the law demanded, hence advantageous to the defendant, was not open to complaint by defendant on appeal.

5. INSTRUCTIONS: Criminal Law: Commenting on and Summing up Evidence: Test. The provision of Sec. 5244, R. S. 1909, that the court shall not comment on or sum up the evidence, is not violated by an instruction which does not assume the existence of facts, single out particular items or facts of evidence and comment on same and which does not tell the jury whether they are entitled to little or great weight.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*Wm. P. Elmer* and *J. D. Gustin* for appellant.

(1) The design of the statute upon which the charge here is founded is to prevent violations of the Local Option Law. State v. Boehler, 148 Mo. App.

614, 128 S. W. 518; State v. Rawlings, 232 Mo. 544, 134 S. W. 530; State v. Burns, 237 Mo. 222, 140 S. W. 871; State v. Clow, 131 Mo. App. 548, 110 S. W. 632. (2) It is not every handling or possession of whiskey which is unlawful. State v. Fulks, 207 Mo. 26, 105 S. W. 733. (3) A mere custody is not such a keeping as is contemplated by the statute. There must be a possession of the liquor. State v. Burns, 237 Mo. 222. (4) Instructions not warranted by the evidence, or which undertake to tell the jury the force and effect it shall have, are improper. State v. Harris, 59 Mo. 550; State v. Jones, 64 Mo. 391; State v. Crugin. 147 Mo. 39, 47 S. W. 1058. (5) It is not an offense to ship or carry liquor into local option territory, secretly or otherwise. State v. Rosenberger, 212 Mo. 648; State v. Boehler, supra; R. S. 1909, sec. 7228.

*Lawrence T. McGee,* Prosecuting Attorney, and *Eugene W. Bennett* for respondent.

(1) The information is valid and sufficient and concisely presents the charge under the statute. Sec. 7227, R. S. 1909; State v. Price, 229 Mo. 670; State v. Rawlings, 232 Mo. 544; State v. McMurtrey, 161 Mo. App. 400. (2) Instruction No. 2 was properly given. State v. Psycher, 179 Mo. 158. (3) This instruction was favorable to defendant in that it limited the circumstances under which a person would be guilty of "keeping" and entirely eliminates the "keeping" for "courtesy or hospitality." State v. Schoenwald, 31 Mo. 157; State v. Griffin, 87 Mo. 613; State v. Robbins, 65 Mo. 445; State v. Joeckel, 44 Mo. 234; State v. Pyscher. 179 Mo. 158.

FARRINGTON, J.—This appeal grows out of a charge by information, founded upon sections 7227, 7228 and 7229, Revised Statutes 1909, that Carrie Galliton, on March 24, 1913, in Dent county, while the Local Option Law was in effect therein, "did then and there unlawfully and wilfully keep and store for and did then

and there deliver to and for another person, to-wit, Lee Sprague, certain intoxicating liquors, to-wit, one pint of whiskey," etc. Upon the trial the jury returned a verdict of guilty of *keeping* intoxicating liquors for Lee Sprague and assessed defendant's punishment at a fine of three hundred dollars.

A summary of the evidence:

It was agreed by opposing counsel that the Local Option Law pertaining to intoxicating liquors was adopted in Dent county on September 6, 1906, and has ever since been in force therein.

Two witnesses testified for the State. One, the sheriff of Dent county, testified that he knew the defendant and Lee Sprague; that defendant resided at Cuba, in Crawford county, and worked for a man named Hogle who was engaged in the wholesale liquor business; that he saw defendant, on March 24, 1913, at Salem, in Dent county, alight from the train which came from Cuba, and that she went from the depot toward town, alone, carrying the grip which she held in her hand when she alighted; that he did not see Lee Sprague get off the train, but heard him crying the name of some hotel while passengers alighted; that when defendant had proceeded but a short distance Sprague overtook her and relieved her of the grip, walking with her; that he (the witness) followed, and when they were three or four blocks from the depot he came up to them and asked them where they were going to put up, and she replied, "I am going to my aunt's." Quoting: "And so I said, 'Whose grip is this?' and she said, 'It is mine.' I said, 'Then you are going to your aunt's?' and she said, 'Yes.' I said, 'I want to go down where there is a light, I want to see what you have in here.' I said, 'What have you got in here?' and she said, 'I have got my things in there.' And when we got down to where I could see she objected to me going into it, and I asked Sprague if he had any claim on that, before I opened it, and he said, 'Yes, I'll be honest about

that, that is mine, it ain't hers.' I said, 'Well, I'll see what is in it' and I opened it and there was ten pints of whiskey in it. Q. Before you opened it did she forbid you opening it? A. Yes, sir; she said she would have me arrested if I opened it, and she grabbed hold of it.'' The grip, containing eight pints of whiskey, was produced in court, and this witness said it was in the same condition as when he first opened it except that he had given Sprague one pint of whiskey that night, and that a few days later Sprague had returned begging for another bottle and it had been given to him. The other witness for the State, evidently a deputy sheriff, testified that he arrested the defendant on March 25, 1913, for the offense in question, and that upon being asked by him what she was doing with the whiskey, she replied. ''We brought it for two other men.''

The court refused to give a peremptory instruction for the defendant.

The accused introduced two witnesses besides herself. The engineer on the train in which defendant and Sprague travelled from Cuba to Salem testified that he saw Sprague board the train at Cuba carrying the grip offered in evidence by the State. Another witness, who was a passenger on the train, gave testimony to the same effect; also, that he had eaten a lunch at what he called ''Hogle's Restaurant'' before leaving Cuba, and that Sprague was there; that as the train was nearing Salem, Sprague asked him to take the grip referred to and place it on the bus, saying he had to work for the hotel; that he (the witness) forgot about the grip, having engaged in conversation, and did not take it. Defendant as a witness in her own behalf testified that Sprague (whom she called Fatty) was on the train and brought the grip to her and asked her to take it off as he had to work for the hotel; that this was the first she knew of the grip; that she had the grip something like two minutes and did not know what it

contained; that Sprague then took it, and that he didn't tell her it contained whiskey until he discovered that the sheriff was following. She admitted she told the sheriff the grip belonged to her, and testified that she might have told him that her clothes were in the grip. She denied that she worked for Hogle, stating that she worked for herself.

The court refused to direct a verdict for the defendant.

At defendant's request, the jury was instructed that there was no evidence of defendant's guilt of *storing* or *delivering* intoxicating liquors.

The court instructed that under the Local Option Law it is unlawful for any person to keep for another any intoxicating liquors, and that if the jury believed from the evidence that defendant did keep for one Lee Sprague one pint of whiskey they would find her guilty. The jury were cautioned in two instructions given at defendant's request that in order to convict her of *keeping* they must believe beyond a reasonable doubt that defendant had and retained possession of the grip with the knowledge that it contained intoxicating liquors—that she knew it contained intoxicating liquors while she kept it for Sprague—and this point is again embodied in the State's second instruction.

We are called upon in this case to declare whether, under section 7227, Revised Statutes 1909, every keeping for another of intoxicating liquors in a county which has adopted the Local Option Law, is unlawful.

Sections 7227 and 7228, Revised Statutes 1909, are as follows:

"Sec. 7227. *Not to be kept, stored or delivered in local option counties.*—No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors whatsoever."

"Sec. 7228. *Exception to preceding section.*—Nothing in the two next preceding sections shall be con-

strued to prohibit any person from ordering liquor for his own or family use, where such liquor is sent direct to the person using same.''

The letter of the statute in question is no broader than the spirit which prompted its enactment. Those counties in the State which had adopted the Local Option Law as a specific for what was deemed a public ill found that by reason of subterfuge and cunning evasion, the remedy was inadequate. Volumes of the appellate court reports contained the proof. Curative legislation was required. The General Assembly has sought to answer the demand, and, it may be assumed, will in the future make such enactments as will under the Constitution protect legal rights and yet provide the means with which to combat the schemes of the resourceful bootlegger. No hardship is likely to result. The State of Missouri in its wisdom, has chosen to localize the question of the traffic in intoxicating liquors. The will of the majority of the voters in each county is the supreme law on this question, and if the burden seems to bear too hard, it may readily be thrown off. Until that is done it is to be assumed that every county which has duly adopted the Local Option Law stands for the abolition of the liquor traffic, as well as the keeping, storing, etc., by one person for another, within its confines. The methods of obtaining liquor in local option counties have accordingly been restricted until it seems that almost the last word has been said. As a part of this general plan, section 7227, Revised Statutes 1909, was enacted by the General Assembly in 1907. It is plain and unambiguous and means just what it says. Our court has already held (State v. McMurtrey, 161 Mo. App. l. c. 411, 143 S. W. 521) that the ''keeping'' for another need not be such as is connected with an illegal sale in order to constitute a violation of the law. After a careful examination of the statute and the authorities cited in appellant's brief, we declare the law to be that under the

statute every keeping, consciously, for another of intoxicating liquors in a county which has adopted the Local Option Law, is, prima facie, unlawful. This puts the burden of explanation upon the party who is best able to explain and follows the rule of statutory construction which requires the defendant to bring himself within the exception. This principle finds analogy in the decisions holding that under an indictment for the sale of intoxicating liquors without a license, if defendant relies on such a license as a defense, he must produce or prove such license, as a matter peculiarly within his knowledge (State v. Edwards, 60 Mo. 490); or the decisions under the statute forbidding wine growers to dispose of wine to a minor without the consent of his parent, master, or guardian, where the State makes a prima-facie case by proving a sale to a minor, which can only be overcome by defendant showing the consent of the parent, etc. (State v. Gary, 124 Mo. App. 175, 101 S. W. 614); or the decisions that a sale of intoxicating liquors by a druggist on prescription is a matter of defense, and that he must produce a prescription which conforms to the law, and show, under section 5784, Revised Statutes 1909, that only one prescription for intoxicating liquor was allowed to the same person at the same time (State v. Wills, 154 Mo. App. 605, 136 S. W. 25); or the late decision of State v. Price, 229 Mo. l. c. 682, 129 S. W. 650, holding that it is not necessary for the information to negative the exceptions found in section 7228, Revised Statutes 1909, those exceptions being matters entirely of defense to be brought forward by the accused.

The defendant in this case as a witness in her own behalf admitted that she kept the grip containing intoxicating liquors for Lee Sprague. But appellant contends that to affirm this judgment is to stamp as criminal an act of courtesy. Not only in defendant's instructions but in those given for the State as well, the jury, as a condition precedent to conviction, were

required to find from the evidence and believe beyond
a reasonable doubt that defendant had and retained
possession of the grip with the knowledge that it con-
tained intoxicating liquors.   This properly left the
burden of proof on the State to show that defendant
*consciously* violated the law against *keeping* for an-
other. It is a familiar canon that laws must be given
a reasonable construction, and it would be grossly un-
reasonable construction of section 7227, Revised Stat-
utes 1909, to hold that it made unlawful an act which
was entirely innocent (State v. Torphy, 78 Mo. App.
206), or to hold that it cast the burden of showing an
innocent intent upon the keeper when he would be in
no better position to prove an innocent intent than
would the State to prove a guilty intent.   In making a
prima-facie case of *keeping,* therefore, the State would
necessarily have to rely upon the surrounding circum-
stances, and upon the acts, conduct, and any statements
made by the defendant.   [State v. Martin, 230 Mo. l. c.
696, 132 S. W. 595.]   Looking at the record from this
viewpoint, we think the State established a prima-facie
case, and hence the verdict should stand as against ap-
pellant's contention that there was an utter failure of
proof of a criminal act.

The State's instruction No. 2 is criticised by appel-
lant.   We think the instruction was advantageous to
her.   It required more of the State than the law de-
manded.   Besides the elements essential to a convic-
tion, the additional element was introduced that the
jury must find that she did it for the purpose of pre-
venting the fact being disclosed that Sprague had the
whiskey and was bringing it to Salem.   This, in fact,
was a mere circumstance tending to show a guilty in-
tent.   Appellant cannot complain of an error com-
mitted in her favor.   [State v. Burk, 234 Mo. l. c. 579,
137 S. W. 969; State v. Heath, 237 Mo. 255, 141 S.
W. 26.]

It is said by appellant that this instruction was a

comment on the evidence and amounted to a direction to convict the defendant. As stated in the case of State v. Pyscher, 189 Mo. 1. c. 158, 159, 77 S. W. 836: "The distinction must be kept in view, between singling out a particular fact and a comment on the evidence which establishes that fact. In the trial of a cause, the State or defendant may offer testimony upon any particular fact, and it is not a comment on the testimony to specially refer to that fact; but it would be otherwise if the court should undertake to refer specially to items of evidence, as to its weight, etc., in support of the fact itself." The statute (Sec. 5244, R. S. 1909) provides that the court shall not sum up or comment upon the evidence. Under this statute it is held that it is not the province of the court to select certain facts shown by the evidence, and tell the jury how much and what weight they shall give to such facts, or whether they shall give such evidence any weight at all. [State v. Smith, 53 Mo. 1. c. 271.] In State v. Homes, 17 Mo. 1. c. 382, the court said: "In the instructions given to the jury, it would have been more in accordance with the law for the court to have defined the offence; to have told the jury what constituted larceny, instead of saying, if they believed the defendant did steal, etc." The instruction complained of in the case at bar does not assume the existence of facts, nor single out particular facts or items of evidence and comment thereon, or tell the jury whether they are entitled to little or great weight. This is the test. [Kelley's Crim. Law and Prac. (3 Ed.), sec. 394.] We think the instruction was, properly, hypothetical.

It appearing from the record that the accused had a fair and impartial trial and that her theory of the case was fully presented by the instructions, and finding no reversible error, the judgment of conviction is hereby affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.