STATE OF MISSOURI, Defendant in Error, v.
FRANK PARKEL, Plaintiff in Error.

Springfield Court of Appeals, November 5, 1914.

1. INTOXICATING LIQUORS: Local Option Territory: Statutory Enactments Concerning. Review of statutory enactments concerning the storing, selling, giving away, delivering, etc., of intoxicating liquors in local option territory.

2. ————: ————: ————: Definitions and Construction. Statutory provisions as to selling, giving away and delivering intoxicating liquors in local option territory as found in Secs. 7227, 7243, R. S. 1909, construed and terms contained therein defined.

3. ————: ————: ————: Delivery: Title. Selling, bartering, keeping and delivering intoxicating liquors in local option territory (Sec. 7227), are forbidden and it matters not in whom the title to the goods is vested.

4. EVIDENCE: Inferences: Conclusions. Courts and juries are not limited in searching for the truth to the mere words of witnesses. They may exercise their common sense in drawing proper conclusions.

5. INTOXICATING LIQUORS: Local Option Territory: Wrongful Delivery to Another: Evidence: Sufficiency. Evidence that defendant kept liquor and jugs in large quantities in his storehouse in local option territory, that people congregated in and around the place and were seen carrying the jugs away, is sufficient to justify the inference of wrongful delivery of liquor in violation of Sec. 7227, R. S. 1909, and warrants a finding of the guilt of the accused.

6. ————: ————: ————: ————: Government License. Prosecution for wrongful delivery of intoxicating liquors in local option territory under Sec. 7227, R. S. 1909. Evidence that defendant possessed a government liquor license is admissible and may be considered as a circumstance in determining whether he did thus deliver intoxicating liquors as charged.

Appeal from Barton County Circuit Court.—*Hon. Arch A. Johnson, Special* Judge.

AFFIRMED.

*R. M. Sheppard* for Plaintiff in Error.

(1) This is not a case where the defendant is charged with having sold intoxicating liquors in violation of the law, hence the evidence relative to the government license was not competent for any purpose in this case. The only object and purpose of showing the license would be as some evidence of sale by the defendant. (2) In order to convict the defendant under Sec. 7227, R. S. 1909, it is incumbent upon the State to show that the defendant stored intoxicating liquors in Barton county, Missouri, with the intention of delivering the same in Barton county, Missouri. Where intoxicating liquors are received by one and stored, if they are not received and stored for the purpose of sale, or delivery in the county where stored, there is no violation of the law. State v. Boehler, 148 Mo. App. 619.

*E. L. Kazee,* Prosecuting Attorney, and *E. L. Moore,* for Defendant in Error.

(1) Every keeping consciously, for another, of intoxicating liquors in a county which has adopted and has in force the Local Option Law is prima-facie unlawful, and such admitted, the burden of explanation is put upon the defendant. State v. Galliton, 176 Mo. App. 115. (2) For a full discussion of the laws of Missouri for 1907, page 231 now sections 7226, 7227, 7228 and 7229 of the Revised Statutes of Missouri 1909 see the following cases: State v. Burns, 237 Mo. 216; State v. Rawlings, 232 Mo. 544; State v. Price, 229 Mo. 670; State v. Galliton, 176 Mo. App. 115; State v. Fraser, 161 Mo. App. 333; State v. McMurtry, 161 Mo. App. 400. (3) The evidence concerning the government license was properly admitted. State v. Sexton, 141 Mo. App. 697; State v. Frazer, 161 Mo. 341;

State v. Helton, 143 Mo. App. 499; Woolen & Thornton on Intox. Liquors, sec. 972.

FARRINGTON, J.—The defendant was tried and convicted on an information, based upon section 7227, Revised Statutes 1909, charging that the Local Option Law was in force and that on the —— day of ——, 1913, "one Frank Parkel in the said county of Barton, in the State of Missouri, did then and there wilfully and unlawfully keep and store for and deliver to other persons than him, the said Frank Parkel, to-wit, for and to diverse persons to the prosecuting attorney unknown, certain intoxicating liquors, to-wit, one gallon of whiskey, one barrel of whiskey, one case of beer, one keg of beer, and one carload of beer, without having any legal authority so to do; against the peace and dignity of the State of Missouri."

No point is made on the form of the information.

The evidence shows that the defendant resided in the town of Burgess, in Barton county, Missouri, and had a storehouse the shape of an ordinary store in a part of which he lived with his family, and that within one year from the date of the information (which was filed on January 6, 1914) the defendant had received from the railroad station agent large quantities of beer and whiskey, running into carload lots. The receipts introduced in evidence show that a small quantity of ice and mineral water in cases was shipped with whiskey and beer. The beer was delivered to defendant in barrels, half barrels, quarter barrels, and cases containing quarts and pints. The whiskey was delivered to him in barrels and in cases. This whiskey and beer was brought from the depot to his storehouse in Burgess which stood about thirty feet east of the Kansas State line. The evidence shows that empty liquor receptacles accumulated to the extent of car-load lots, when he would return them to the brewery they were originally sent

from. It is shown that the defendant and his drivers (defendant for the most part) receipted to the railroad company for the beer and whiskey. The receipts, showing their dates and items delivered, were introduced, and there were some eighteen of them. The following shows the amount of alcoholic liquor received by defendant on some of these receipts and gives a general idea of the quantity of intoxicants he was receiving at Burgess and placing in his storehouse.

| Oct. 29, 1913, | 110 quarter barrels of beer. |
| | 140 cases of 4 doz. pints of beer. |
| | 10 cases of 3 doz. pints of beer. |
| Oct. 23, 1913, | 20 1/2 barrels of beer.. |
| | 80 1/4 barrels of beer. |
| | 150 cases of 4 doz. pints of beer. |
| | 3000 pounds of ice. |
| Nov. 28, 1913, | 10 cases of whiskey. |
| Nov. 27, 1913, | 110 1/4 barrels of beer. |
| | 140 cases of 4 doz. small. |
| | 3000 pounds of ice. |
| Nov. 25, 1913, | 10 1/2 barrels of beer. |
| | 25 1/4 barrels of beer. |
| | 25 cases quart B beer. |
| | 160 cases 4 doz. pint bottle beer. |
| | 10 cases 3 doz. pint bottle beer. |
| Nov. 7, 1913, | 4 barrels whiskey. |
| | 1 case liquor. |

These six receipts are about the same as twelve others which were introduced in evidence. The eighteen shipments received by defendant covering a number of carloads were taken out of the depot by him from October 29, 1913, to December 31, 1913. There is evidence of a shipment of jugs, and of a large pile of these jugs being in or about defendant's storehouse. One witness testifies to having seen a pile of possibly one hundred. There is also evidence that defendant received shipment of corks.

The defendant stood on his demurrer to the evidence and offered no testimony.

It was shown that frequently defendant's wagons in charge of his employees were filled at the storehouse with whiskey and beer and driven into Kansas. These same wagons were seen returning from Kansas with empty receptacles. Defendant had posted in his storehouse a government license to sell, wholesale and retail, intoxicating liquors at Burgess, Barton county, Missouri. There is no direct evidence in this record that he ever sold any intoxicating liquors at this storehouse; that is, no witness swears that he bought or ever actually saw any whiskey or beer sold at that place. There is testimony, however, that men, other than his employees or members of the defendant's family, were seen to congregate around the storehouse, and at times were seen to be leaving defendant's place of business carrying jugs of the same color and size that evidence shows defendant kept at his place.

The foregoing is a summary of the evidence.

Plaintiff in error contends that there is not sufficient evidence to sustain the conviction, and to this we shall first attend.

A construction of section 7227, Revised Statutes 1909, becomes important. Prior to 1907 the law sought to prohibit in local option territory only selling, giving away or bartering, either directly or indirectly, intoxicating liquors. [See Sec. 7243, R. S. 1909.] It became apparent to the Legislature that more and added prohibitory means were necessary in local option territory, and this resulted in the enactment of the act of 1907. [See Session Acts 1907, pp. 231-232, now section 7226, 7227, 7228 and 7229, R. S. 1909.] The first section of the act (section 7226) has been declared unconstitutional because the section is more comprehensive than the title to the act. [See State v. Rawlings, 232 Mo. 544, 134 S. W. 530.] The title of

the act is as follows: "An Act. to prohibit persons running order houses from delivering intoxicating liquors to persons having no license to deal in the same, and to prohibit the keeping, storing for, or delivering to another person intoxicating liquors in local option counties, and providing penalties for the violations thereof." Section 7227, Revised Statutes 1909, is as follows:

"Sec. 7227. *Not to be kept, stored or delivered in local option counties.*—No person shall keep, store or deliver for or to another person, in any county that has adopted or may hereafter adopt the Local Option Law, any intoxicating liquors of any kind whatsoever."

The validity of this section has been upheld by the Supreme Court (State v. Rawlings, supra) because that part of the title relating to local option counties only is no broader than this section—the one under which this information was drawn. This section prohibits the keeping or storing of intoxicating liquors by another in local option territory, and prohibits the delivering of intoxicating liquors to another in such territory. What does this mean? That where the Local Option Law is in force one cannot sell, give away (otherwise than under exception made in State v. Fulks, 207 Mo. 26, 105 S. W. 733) or barter intoxicating liquors, and more, that he cannot keep or store for another, *or deliver to another,* such intoxicants. In other words, section 7227 is merely an amendment to section 7243, Revised Statutes 1909, making the violation of new acts under Local Option Law misdemeanors; and in this connection it will be noted that the punishment under section 7243 and section 7227 is the same. To merely prohibit "sales" was not, in the judgment of the Legislature, broad enough, because, as between vendor and vendee of personal property, delivery is not necessary to complete the sale. (See Benjamin on Sales, section 315.) A sale

passes title as soon as the bargain is struck, without a delivery or a payment. [See Briggs v. United States, 143 U. S. 346, 36 L. Ed. 180.] The same may be said as to a barter. It is true that as to a gift of personal property, in order that it may be valid, possession must change, necessitating a delivery. But this all goes to show that in the legislative mind more prohibition was needed in local option counties than was provided for in section 7243. Consequently there is forbidden a delivery of intoxicating liquors in such counties by one party to another. What is meant by "to deliver to"? The New Standard Dictionary, page 675, gives the following definition: "To place in the power or possession of another; surrender possession of; transfer, give; hence to communicate . . ." Webster's International Dictionary defines the term as follows: "To give or transfer, to yield possession or control of; to part with (to); to make over, to commit, to surrender, to resign; . . ." It is "a handing over"—State v. Fraser, 161 Mo. App. l. c. 341, 143 S. W. 545.

By the law as it now stands, not only are certain, specific acts, such as *sale, barter, keep,* etc., forbidden, but the act of *delivery* is forbidden, the latter act carrying a wider range than any of the others named, for, whether the title passes with possession or merely possession passes from the seller or barterer on the one part or the storer or keeper on the other, to another person, a *delivery* must take place. Where intoxicants are delivered from one person to another, the title to the goods, prior to the delivery, was either in or not in the deliverer, and from the acts prohibited in the law, it will be seen that it matters not in whom the title to the goods was vested.

If, therefore, there is any evidence of a delivery of any intoxicants in Barton county as charged in the information, the verdict of the court sitting as a jury must not be disturbed. But plaintiff in error contends

State v. Parkel.

there is no evidence in the record that there was any delivery that took place. Let us see. Here we have a man in possession of vast quantities of whiskey and beer—railroad carload lots of it—all kept and stored by him in prohibited territory. We also find him in possession of a great number of jugs of a certain color, and corks. At times, crowds of men gather at his storehouse, and there is evidence that some of these men going away from there carried jugs similar to those defendant kept. It is admitted in the brief of plaintiff in error that he used jugs as receptacles of whiskey. We also find him in possession of a government license permitting him to sell this beer and whiskey where he had it stored. Will any one say that it is an unreasonable inference to draw, in the light of all circumstances, that the jugs which were carried away from this place did not contain intoxicating liquors? We think not. The Anglo-Saxon law has never surrounded the liberty of the individual with the requirement that he can only be convicted where the evidence establishes his guilt beyond the shadow of a doubt; that it be established beyond a reasonable doubt is sufficient. Verdicts are seldom rendered on positive proof. Enough has been done, to uphold a verdict of guilty beyond a reasonable doubt, when there is introduced evidence from which a reasonable inference of such guilt may be drawn. Suppose a man were seen coming from a flour mill with a sack on his shoulders similar to those kept by the miller. Would any jury or any sensible man be unwarranted in drawing the inference that the sack contained flour? A maid seen coming from a well carrying a pitcher. Would that not be some evidence from which one could reasonably infer that the pitcher contained water? Again, suppose the defendant in this case were prosecuting one of the jug carriers for stealing his whiskey from his storehouse and introduced testimony that the jug carrier was seen coming

from the defendant's place of business with a jug similar to those kept in the storehouse. Would not that evidence tend to prove that whiskey was in the jug? Common sense answers such a question. The judge sitting as a jury probably reasoned that men do not come away from liquor storehouses carrying empty jugs. Courts and juries are not limited, in searching for the truth, to the mere words of witnesses. [See State v. Draughn, 140 Mo. App. 263, 124 S. W. 20.]

Now may it be said that possibly these men *bought* the whiskey that was in the jugs and that the information does not charge a *sale*. Whether they bought it, or whether it was bartered for, or whether it was already their property and they simply went to get it, in any of these events there was a delivery of it in Barton county, there being no evidence that they stole it or took it by force.

We must therefore conclude that there is sufficient evidence to sustain the conviction.

Defendant complains that the trial court erred in admitting evidence of the presence in the defendant's storehouse of the government license permitting him to sell intoxicating liquors as a wholesaler or retailer, because, it is argued, there is no charge of a sale. It is true that no sale is charged, but the license from the government authorizing sales necessarily authorizes and permits a delivery. The license then is evidence of the defendant's ability to deliver so far as the United States government is concerned, and can therefore be considered as a circumstance in determining whether he did in fact deliver.

The judgment of the trial court is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.