STATE OF MISSOURI, Respondent, v. ADAM EL-MORE, Appellant.

Springfield Court of Appeals, December 22, 1916.

1. **INTOXICATING LIQUORS:** Delivery of in Local Option Territory: What Constitutes. Appeal from conviction on a charge of delivering to another, intoxicating liquor in local option territory. Accused received money from another with the understanding that he was to procure whisky with same. The money was given by the accused to a third party who advised the accused that he had put some whisky under a certain box. This information the accused conveyed to the purchaser. *Held* that there was a delivery of the whisky by the accused to such purchaser.

2. **INSTRUCTIONS:** Commenting on Evidence: What Not. In a prosecution for delivery of whisky in local option territory, an instruction stating that certain facts set out in the instruction which the evidence tended to prove would constitute a "delivery" of the whisky by the accused was not erroneous as commenting on the evidence.

3. **DEFINITION:** "Delivery." There is a delivery of an article when a voluntary and intentional surrender is made of such article by one who is in possession and control of same to another in such a manner that it is intended that the other shall come into possession and control of the article and the other does come into full possession and control of it. (PER FARRINGTON, J.)

Appeal from Texas County Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Geo. T. Meador* for respondent.

*Hiett & Scott* for appellant.

ROBERTSON, P. J.—Defendant was convicted of delivering to another intoxicating liquors in local option territory and appeals.

His case is stated as follows in the brief filed here in his behalf:

"At the time of the alleged offense the Local Option Law was in force in Texas county, Missouri.

"In March or April, 1915, Raymond Beers wanted to buy some whiskey and made inquiry of the defendant to discover if the defendant knew where he could get it.

"The defendant told him there was a fellow that he thought had some, but would not promise him for sure that he could get the whiskey, until he saw the fellow. The defendant saw the fellow, got one dollar from Beers and went back to where the fellow was that had the whiskey. The fellow that had the whiskey said his name was Jones. Jones, Dave Holland and the defendant walked behind the Texas County Bank. The defendant gave Jones three dollars and got two pints of whiskey for himself and then told Jones that there was another fellow that wanted a pint; that Jones said, 'I do not know him, but you tell him I will put the pint under this pasteboard box.' Defendant did not see the pint, but gave Jones the three dollars. Dave Holland bought a pint from Jones at the same time.

"The defendant at no time had the whiskey that Beers got, in his possession. Jones put the whiskey under the box and all that the defendant had to do with it was to give Jones the dollar Beers gave him and tell Beers where Jones said he would put the whiskey.

"The Court instructed the jury: 'The Court instructs the jury that if you believe and find from the evidence that the defendant, Adam Elmore, had in his possession one pint of whiskey, and if he contracted and agreed with the witness, Raymond Beers, to let him have the said whiskey at and for the sum of one dollar, and if the said Beers paid to the said defendant the said sum of one dollar for the said whiskey, and if the defendant, in pursuance of said agreement to let him have the said whiskey for the said sum of one dollar, deposited

the same in a box at the rear of Wes Smith's store, and told the said witness where he could find the same, and if the said witness, Beers, got the said whiskey at the place designated by the defendant, this would constitute a sale of the whiskey by the defendant to the said Beers.'

"The jury found that the defendant did not sell the whiskey to Beers.

"The Court instructed the jury as follows: 'No. 2. The Court instructs the jury, that what is known as the Local Option Law prohibiting the sale of intoxicating liquors, was adopted in Texas county, Missouri, on the 6th day of April, 1906, and has been in full force in said county from the said date to the present time; and it has been unlawful in said county, during all of said time, for any person to sell to another any intoxicating liquors. And if you believe and find from the evidence that the defendant in Texas county, Missouri, on or about the ———— day of March, 1915, did deliver to one Raymond Beers one pint of whiskey, you will find him guilty, as charged in the second count of the information, and assess his punishment at a fine of not less than three hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail for a term of not less than three months nor more than twelve months, or by both such fines and imprisonment.

'No. 4. The Court further instructs the jury that if you find from the evidence that the defendant did not sell the pint of whiskey to the witness, Beers, as defined by these instructions, but if you do find that he agreed with the witness Beers, to procure for him one pint of whiskey from some other person, and the said Beers gave to the defendant the sum of one dollar with which to procure the said whiskey, and if the defendant gave the said dollar to some other person and agreed with him that such other person should deposit a pint of whiskey in a box at the rear of Wes Smith's store where the said Beers could get it, and if the defendant notified the said Beers where he could find the said pint of whiskey, and if, in pursuance of said notice the said Beers went to the said box and got the said pint of whiskey, these facts would

constitute a delivery of the whiskey by the defendant to the said witness, Raymond Beers.' ''

The argument in appellant's behalf is that defendant did not have and could not deliver possession to Beers; that before there could be a delivery to another there must be an actual handing over.

It is also said that instruction four is erroneous in that it does not properly define the word delivery and is a comment on the evidence.

In the first place it is evident that the parties involved in the transaction which resulted in this prosecution adopted what they conceived to be a cunningly devised plan to obtain intoxicants in local option territory contrary to law without a technical violation thereof. The case was properly tried and the verdict of the jury must be upheld.

That there was a delivery in this case within the meaning of the Local Option Law we think there should be no question. What was done in this case the jury had a right to believe was a mere sham to avoid the unquestioned liability that would attach had the transaction been carried on in the usual course of ordinary business affairs. Such shams may be ignored and the dealings observed in the light of the real purpose to be accomplished. [State v. Zehnder, 182 Mo. App. 161, 172, 168 S. W. 661, and cases there cited.] Defendant undertook the task of procuring whiskey for Beers and that was to be done by buying it from Jones and the undertaking could be consummated only by defendant making or causing the delivery to be made to Beers. This he undertook to do by having Jones place it under a box and he then conveyed to Beers the information of what had taken place. When Jones placed the whiskey under the box, or informed defendant he would do so, the act was as effective in reaching the desired end as if Jones had handed it over to defendant or advised him that he would do so in a short time thereafter, if followed up by a compliance with the promise. The defendant paid the money and thereupon had the assurance of what disposition would be made of the whiskey.

It was then under his control as effectively as if he had it in his hands. But for the information which he had being conveyed to Beers the latter would not have procured the whiskey under this arrangement. The definitions of delivering quoted in State v. Parkel, 185 Mo. App. 70, 76, 170 S. W. 915, include the act of yielding and surrendering control of a thing. When defendant paid the money to Jones and the whiskey was placed, then or afterwards, under the box he had the absolute and exclusive control of it. He could surrender that control to Beers or not as he saw fit and Beers could accept or refuse it as he saw fit. Defendant had the right himself to the manual possession of it. He could have gone and procured it and carried it to Beers, but he did not do this; he yielded that right to Beers by informing him of its whereabouts which was equivalent to telling him that he had paid the price and procured a delivery of it through himself to Beers. Beers had nothing whatever to say about the delivery when defendant was dealing with Jones. The original arrangement between defendant and Beers contemplated a sale and delivery to defendant and in turn defendant's delivery to Beers. This would have been the usual method to pursue in a transaction of this kind as to an ordinary commodity. Defendant in carrying out that arrangement resorted to the peculiar method of having the whiskey placed under a box at which place it was under his exclusive control until surrendered to Beers. The argument that defendant was the mere agent of Beers and that, therefore, a delivery procured by him was a delivery to Beers and, hence, he is not guilty is refuted by remembering that defendant was employed, to say the most, only to purchase and deliver in the regular and ordinary course of affairs. If defendant had paid the price of the whiskey and ordered it placed at some distant point for Beers the latter may not have accepted it as a sale and delivery to him and then it would have remained in the possession and control of defendant. He would then unquestionably have been the only person who had control of or right to it. We think that

the form adopted in this case technically should not be allowed to becloud the real transaction that took place between these parties.

The complaint made concerning instruction numbered four is without merit. [State v. Galliton, 176 Mo. App. 115, 123, 161 S. W. 848.]

The judgment of conviction is affirmed.

*Sturgis, J.,* concurs; *Farrington, J.,* concurs for the reasons stated by him as follows:

It is uncontroverted that Elmore was sent by Beers to purchase and deliver to Beers a pint of whiskey, for the sum of one dollar, from a bootlegger. Elmore took the dollar and bought the whiskey. When the bootlegger placed the whiskey under the box he hereby made a delivery to Elmore, the agent, the seller having lost all title to and right of possession or control of the whiskey, the right of possession and control at once vesting in Elmore. Thus we have a case wherein Elmore, in possession of intoxicating liquor in local option territory, through a voluntary and intentional act of his own caused that possession and control to be lost to himself and to be placed in Beers. That act of surrendering the possession and control to Beers occurred in local option territory, as stated, and was a delivery. The voluntary and intentional surrender of an article by one who is in possession and control of the same to another in such a manner that it is intended that the other shall come into possession and control of the article and the other does come into full possession and control of it. This constitutes a delivery.